## Stevenson *v.* Ebervale Coal Company et al., Appellants.

*Waters—Pollution of waters by coal dirt—Damages—Measure of damages—Mines and mining.*

In an action to recover damages for the pollution of a stream by coal dirt, the measure of damages is the cost of removing the coal dirt, unless the expense of the removal of the coal dirt exceeds the value of the entire property, in which case the value of the property is the limit of the measure of damages, and in no event can there be a recovery in excess of the entire property for the permanent injury.

*Waters—Pollution—Evidence.*

In an action to recover damages for the pollution of a stream, evidence is admissible that there were other causes than the alleged injuries committed by the defendants that contributed to the impairment of the value of plaintiff's property.

*Waters—Pollution—Injury to mill property—Evidence.*

In an action to recover damages for the pollution of the waters of a stream which had been used to operate a wool factory, evidence is inadmissible to the effect that a water company would agree to supply fresh water to the plaintiff at a certain rate per annum, in an amount sufficient to wash the wool in his factory.

The plaintiff has the right to use the water of the stream as it naturally flowed over his own property, and private parties polluting it cannot urge in mitigation of the damages they cause that they offered to give him a substitute for it. The right to arbitrarily decline the use of any other water proffered by the defendants was as absolute as the right of the plaintiff to use his own unpolluted water.

Where the water of a stream used in running a wool mill has been polluted by coal dirt, and the owner sues for damages, evidence offered by the defendants is admissible to the effect that the owner had declared that it was difficult to do business because of the scarcity of wool, as the farmers had practically quit raising it; that it was extremely difficult to get skilled labor, owing to remoteness from any town; that the machinery was old and that he the owner was old himself.

*Waters—Pollution—Evidence—Opinion of witnesses.*

In an action to recover damages for the pollution of a stream, opinions of witnesses as to the annual depreciation of the property are inadmissible, and this is especially so where the opinions are mere reckless guesses based upon no facts whatever.

*Evidence—Declarations of party to record—Testimony in other legal pro-*
*ceedings—Joint tort feasors.*

The declarations of a party to the record, if against his interest, are al-
ways admissible, and, when the offer is to prove what he testified to in cer-
tain proceedings at law, it is an offer to prove conclusively what his ad-
mission was.

Where several defendants are sued as joint tort feasors, the sworn testi-
mony of one of the defendants in a previous action at law is admissible
against such defendant.

Argued April 16, 1901.   Appeal, No. 47, Jan. T., 1901, by
defendants, from judgment of C. P. Luzerne Co., May T., 1896,
657, on verdict for plaintiff in case of Joseph Stevenson v. The
Ebervale Coal Company, Jeddo Tunnel Company, Limited, The
Cross Creek Coal Company, Jeddo Coal Company, John Markle,
Alvin Markle, George B. Markle, Clora Markle, Ida Hassen-
bruch, trading as G. B. Markle & Company, Calvin Pardee,
Ario Pardee, Frank Pardee, A. S. Van Wickle, The Lehigh
Valley Coal Company, Linderman and Skeer, The Black Ridge
Coal Company, M. S. Kemmerer and Company and Coxe Broth-
ers and Company.   Before McCollum, C. J., Mitchell,
Brown, Mestrezat and Potter, JJ.   Reversed.

Trespass to recover damages for pollution of a stream by coal
dirt.   Before Lynch, J.

At the trial it appeared that plaintiff was the owner of a farm
upon Nescopeck creek, and that on the land he operated a
woolen mill.   The evidence for the plaintiff showed that culm
and coal dirt filled up plaintiff's dam, and that the water was
polluted by sulphur, so that it could not be used in cleaning
wool.   It also appeared that the drinking water in plaintiff's
well was affected.

Under objection and exception, George Stevenson and Wil-
liam Stevenson, sons of the plaintiff, were permitted to testify
as to the annual depreciation in the value of plaintiff's prop-
erty. [1; 2]

Plaintiff's counsel made the following offer:

We desire to offer in evidence, if the court please, the testi-
mony of John Markle taken in the case of John Geddig v.
The Union Improvement Company and the Jeddo Tunnel Com-
pany, Limited, John Markle being one of the defendants in
this case, and it is offered for the purpose of showing by his

own declarations what they did with the Jeddo Tunnel Company, and that they contemplated and are dumping more sulphur water and more culm into the creeks that connect with the Nescopeck creek which flows through the land of the plaintiff in this case than in times past. This is offered for the purpose of showing the declarations made by one of the defendants against his own interest.

Defendants' counsel : Objected to ; first, because John Markle is within the jurisdiction of the court and could be subpœnaed as a witness or called as upon cross-examination ; second, that he is not a party to this action, except as a member of the firm of G. B. Markle & Company ; third, the testimony offered was taken in another case between other parties, to wit : a proceeding in equity in which John Geddig was plaintiff and the Union Improvement Company and the Jeddo Tunnel Company, Limited, defendants, No. 115, October term, 1894 ; fourth, that the declarations of John Markle are not competent testimony as against any defendant on this record.

Plaintiff's counsel : To which we say we do not offer this for the purpose of affecting any one except John Markle, himself, as one of the defendants.

The Court : When was the testimony taken ?

Plaintiff's counsel : 1894, November 2.

The Court : The testimony as a declaration against interest of John Markle is admitted as affecting John Markle. Exception noted for the defendants. Bill sealed. [3]

The court subsequently refused to strike out the deposition of John Markle. [4]

When Jonathan Limebac and Charles L. Sands were on the stand, offers were made to prove by these witnesses that owing to competition with modern mills, and the changed conditions of the wool business, plaintiff's mill could not be operated with profit. Objections to these offers were sustained, and bills sealed. [5-9, 16-18]

Defendants made the following offer :

Defendants' counsel : We propose to prove by this witness that the Nescopeck Water Supply Company bought a piece of land adjoining the plaintiff on Nescopeck creek over which a fresh stream of water passes into Nescopeck for the purpose of conveying the said water to the town of Nescopeck ; and that

the Nescopeck Water Supply Company will agree to furnish water if the pipes are laid from this stream to the mill of the plaintiff at the rate of $15.00 per annum, in an amount sufficient to wash wool at the plaintiff's factory, to an amount of 1,000 gallons or more per day.

Plaintiff's counsel: Objected to as immaterial and irrelevant.

The Court: Objection sustained, exception noted for defendants, bill sealed. [10]

When Shadrack Eves and Charles L. Sands were on the stand, offers were made to prove the real value of the property. Plaintiff's objections to these offers were sustained, and bills sealed. [11–15]

When D. J. McCarthy was on the stand he was asked these questions: "Q. Have you ever been out to Stevenson's place? A. Yes, sir. Q. When were you first there? A. In 1893, my recollection is. Q. Whether you ascertained the condition there at that time? A. I did, sir. Q. Whether you had a conversation with Mr. Stevenson? A. I did. Q. State what he said, if anything, with reference to the difficulty of doing business there at that time. A. His son Charles—Mr. Oberender was present—Q. Was Stevenson? A. It was Stevenson had the conversation. He said it was extremely difficult to do business there because of the scarcity of wool. The farmers had practically quit raising it and it was extremely difficult to get skilled labor, being remote from any town, and that he experienced considerable difficulty, that his machinery was old, and he was old himself."

Plaintiff's counsel: We object to this testimony as being immaterial and irrelevant to this issue and ask that it be stricken from the record.

The Court: The objection is sustained, the motion to strike out allowed, and exception noted for defendant and a bill sealed. [19]

The court charged in part as follows:

[As to the sulphur water. The Harleigh mines and the Ebervale mines are situated upon the Black creek or a tributary. In 1886, according to the deposition of Mr. Markle, these mines were flooded and remained so until 1894, when the Jeddo tunnel, nearly five miles long at a grade of about fifteen feet to the

mile, from Butler valley through the mountain under the Harleigh and Ebervale flooded mines, was completed. The tunnel, Mr. Markle testified, was driven for the express purpose of winning the coal in these abandoned places. In 1886, they were permitted to fill with mine water, principally, or mostly, sulphur water. In 1894, this immense body consisting, as Mr. Markle says, in the neighborhood of one thousand million gallons, was tapped by boring a hole from the bottom of the mines down into the tunnel and putting into the hole or tap some sort of a spigot to regulate the discharge, and by such means the water was taken from Jeddo, or at least from Harleigh and Ebervale, conveyed through the tunnel into the Nescopeck creek and to Mr. Stevenson's property. It is contended by the defendant that for the sulphur water thus discharged which may eventually have done damage to Mr. Stevenson, that he is not entitled to damages, that the supreme court has decided the owner of coal property may develop coal land or property, establish mines and breakers upon it and let the sulphur water pumped from the mines take its natural course to the nearest stream, and if this sulphur water thus discharged does damage to a lower riparian owner, such owner has no remedy. The Supreme Court has so decided. But in the Sanderson case, which has been referred to, the water was discharged from the mines and permitted to run into the stream or flow in a natural way from the mine into the stream and then down. Here, different from the Sanderson case, a large body of water was allowed to accumulate in an abandoned, or at least a mine not worked. For the purpose of securing the coal in the adandoned mine it was necessary to remove the water, which was carried into another water shed through a tunnel and then discharged into the stream. If there was nothing but the sulphur water perhaps the principle invoked here would apply. But it seems from the testimony the coal dirt sent down Black creek and its tributaries and thence upon Mr. Stevenson's land may have been mixed with sulphur water discharged from the Jeddo tunnel and brought down the Nescopeck creek. The testimony tends to show this coal dirt when mingled in the stream with the sulphur water would produce more sulphur water. If you believe this to be the case and believe the coal dirt sent down Black creek mixed with the sulphur water discharged from the

Jeddo tunnel and thus put an increase of sulphur water in Mr. Stevenson's dam and race which caused percolation through the soil and into his well, he may recover from the damage so done to his well water, as well as for the damage so done by reason of this culm in the stream. [20]

Defendants' points among others were as follows:

1. That under all the evidence in the case the defendants were and are engaged in the lawful business of mining, preparing and shipping anthracite coal, employing the usual methods of mining, and to enable the plaintiff to recover for any injuries claimed to have been sustained by him, he is required to show that the mining and preparing of coal was negligently or maliciously done by the defendants and that the injuries were the result of such negligence or malice. *Answer:* If by this point it is meant that the mining and preparing of coal includes throwing the water into the stream or so it would be swept into the stream by the ordinary floods or rains, it is affirmed. But if it has reference purely to the mining of coal and shipping of coal then it is not affirmed. As I stated before, if the defendants or either of them threw the refuse into the stream or so near that the ordinary floods would carry it there, it was a negligent act. [21]

3. Under all the evidence in the case, in the process of mining, subterranean streams of water are necessarily opened, and it is absolutely necessary, in order to work the mines at all, to pump the accumulating water to the surface or drain the mines by means of tunnels, and if water so brought to the surface from the defendant's mines finds its way into neighboring streams, and thence into Nescopeck creek and pollutes the plaintiff's wells with sulphur water and the waters of said creek, the plaintiff cannot recover damages for such pollution, for the reason that the defendants could not otherwise enjoy the benefits of the ownership of their land and mines. *Answer:* This is refused for reasons which I have stated. [22]

4. Under all the evidence in the case prior to the opening of Jeddo tunnel to drain the Harleigh, Ebervale and Jeddo mines, the mine water which accumulated in the said mines was brought to the surface by means of pumps, and the sulphur water so brought to the surface drained into Black creek and passed down into Nescopeck creek through the plaintiff's premises, and

since the completion of the said tunnel in 1894, the sulphur water from said mines is drained to the surface and finds its way into the stream and thence through the plaintiff's premises and it is immaterial whether the sulphur water from the said mines is brought to the surface by means of pumps or a tunnel, the defendants are not liable for any injury sustained by reason of sulphur water polluting Nescopeck creek through plaintiff's premises or for the pollution of the wells on his premises with sulphur water. *Answer:* This is denied. [23]

5. The defendants are not liable to the plaintiff for any damage for the pollution of the waters of Nescopeck creek through his premises or for any injury to his wells on said premises by reason of sulphur water, for the reason that under all the evidence in this case the removal of sulphur water from the defendants' mines is absolutely necessary to enable them to mine coal, and sulphur water cannot be prevented from running into adjacent streams and thence finding its way into Nescopeck creek and through the plaintiff's property. The defendants cannot be required to stop the operation of their mines because necessarily in the mining of coal, mine and sulphur water may pollute the stream through the land of a lower riparian owner or injure the water of a well on his premises. *Answer:* This is denied. [24]

7. Under the pleadings in this case if the plaintiff is entitled to recover he can only recover in this case for the loss of his crops on his farm from the day of 1890 by reason of the deposit of coal dirt thereon and for the loss in rental value of his factory or loss of earnings of the said factory during that period and the plaintiff having furnished no evidence of either loss of crops or of rental value of the farm and factory there can be no recovery. *Answer:* This is not correct. This part is, "If there has been any loss of crops." I do not recall any such testimony. There is no allegation, or no proof at least, that any part of the farm other than about three or three and half acres along the creek was damaged by reason of the coal dirt or sulphur or any refuse in the stream; as to the small strip along the stream claimed to be agricultural land, it has not been shown clearly what crops were planted, what the failure of the crops was, or to what extent they were damaged. It is claimed that it dams the stream over this strip, coal dirt, mixed with the

land, injured the surface for crop purposes, but to what extent there is no testimony. You would not be warranted in these circumstances in giving damages for injury to this piece of land. If the plaintiff wished to recover for damages to this strip he had it in his power and it was his duty to show you to what extent the land was injured or the crops had failed by reason of injury. [25]

9. That in this form of action the difference in the market value of the farm and factory in May, 1890, and the present time is not the correct measure of damages for a permanent injury to the plaintiff's property ; the questions are, what was the condition of this stream six years before this suit was brought? Was the water then polluted? Having ascertained the condition of the stream at that time, the jury should then ascertain from the evidence, whether the condition had been made worse since that date, if so, to what extent? If the plaintiff can recover it is only for the injury done him by reason of culm or coal dirt since May, 1890. *Answer :* This is correct with the qualification which I have stated concerning the sulphur water. [26]

Verdict and judgment for plaintiff for $32,708. Defendants appealed.

*Errors assigned* were (1–19) rulings on evidence, quoting the bill of exceptions ; (20–26) above instructions, quoting them ; (27) that the verdict was excessive.

*S. P. Wolverton* and *H. W. Palmer*, with them *A. H. McClintock*, *P. V. Weaver* and *F. W. Wheaton*, for appellants.—The measure of damages for injuries to property caused by culm or coal dirt being washed down a stream, and deposited upon the plaintiff's property, is not the difference in the market value of the property before the injury and as affected by it, but it is the cost of remedying the injury, unless that equals or exceeds the value of the thing injured, when such value becomes the measure : Robb v. Carnegie Bros. & Co., 145 Pa. 324 ; 3 Sedgwick on Damages (8th ed.), sec. 1293 ; 1 Sutherland on Damages, sec. 444 ; Lentz v. Carnegie Bros. & Co., 145 Pa. 612 ; Elder v. Lykens Valley Coal Co., 157 Pa. 490; Eshleman v. Martic Twp., 152 Pa. 68 ; McGettigan v. Potts, 149 Pa. 155.

It was manifest error in the court below to allow the decla-

rations or testimony of John Markle, one of the partners of George B. Markle & Company, one of the defendants, in this suit, made in the absence of the other defendants in a suit to which they were not parties to be given in evidence with the necessary result of affecting all of his codefendants in this suit: Little Schuylkill Navigation Co. v. Richards, 57 Pa. 142 ; Gallagher v. Kemmerer, 144 Pa. 509 ; Forrester v. Kline, 64 Pa. 32 ; Stiles v. Bradford, 4 Rawle, 394 ; Weed v. Kellogg, 6 McLean (U. S.), 44 ; Richardson v. Stewart, 2 S. &. R. 84 ; Chess v. Chess, 17 S. & R. 409 ; Huidekoper v. Cotton, 3 Watts, 56 ; Lafferty's Est., 184 Pa. 502 ; Fearn v. West Jersey Ferry Co., 143 Pa. 122.

Damages resulting to another, from the natural and lawful use of his land by the owner thereof, are, in the absence of malice or negligence, damnum absque injuria: Penna. Coal Co. v. Sanderson, 113 Pa. 126 ; Robb v. Carnegie Bros. & Co., 145 Pa. 338.

This court has the power under the act approved May 20, 1891, to see that justice is done in this case by exercising the powers conferred by the act of 1891 and fixing the amount to be paid by the defendants to the plaintiff : Smith v. Times Publishing Co., 178 Pa. 481 ; Wolf v. Phila. Traction Co., 181 Pa. 399.

*John M. Garman,* with him *John T. Lenahan,* for appellee.— Depreciation of property may be measured by showing the cost of supplying lost water power by that of steam power : Lee v. Springfield Water Co., 176 Pa. 229 ; Seely v. Alden, 61 Pa. 302.

The opinions of witnesses were admissible : Penna. & N. Y. R. R. Co. v. Bunnell, 81 Pa. 426 ; Kellogg v. Krauser, 14 S. & R. 137 ; Brown v. Corey, 43 Pa. 506 ; Penna. R. R. Co. v. Henderson, 51 Pa. 321 ; 1 Sutherland on Damages, section 445 ; Whiton v. Snyder, 88 N. Y. 299.

The declarations of cotrespassers in civil actions are governed by the same rules ; that is, if several are jointly sued, the declarations of each, will constitute parts of the res gestæ, and are admissible against all; while those which amount to mere admissions, or narratives of past events, can only be received against the party making them : Taylor on Evidence, section

597; Kline v. First Nat. Bank of Huntingdon, 15 Atl. Repr. 433; Spencer v. Campbell, 9 W. & S. 32.

The verdict was not excessive : Rudolph v. Penna. Schuylkill Valley R. R. Co., 186 Pa. 555; Patton v. Phila., 189 Pa. 602.

OPINION BY MR. JUSTICE BROWN, January 6, 1902:

The real complaint of the appellants is that the verdict is excessive. The only reason assigned in the application for a new trial in the court below was, that the damages assessed by the jury were too high, and, by the twenty-seventh and last assignment of error, which is not sustained, we are asked to reverse or modify the judgment for the same reason. We are urged not to remit the case for another trial, but, under the power conferred by the Act of May 20, 1891, P. L. 101, to reduce the verdict to such a sum as, in our judgment, under the testimony, will be right and proper. This we are at present unwilling to do, being of one mind that a jury, properly directed by the court as to the measure of damages, after hearing competent testimony, will return a just finding ; and, as we are compelled to sustain some of the assignments of error, on a new trial there may be a verdict which will not be regarded as unreasonable.

The tenth point submitted by the defendants was as follows : "If the jury find the plaintiff is entitled to recover, the true measure of damages for permanent injury in this case is the cost of removing the culm or coal dirt, unless the expense of removal of the coal dirt exceeds the value of the entire property, in which case the value of the property is the limit of the measure of damages, and in no event can there be a recovery in excess of the value of the entire property for a permanent injury." This point was properly affirmed : Lentz v. Carnegie Bros. & Co., 145 Pa. 612; Eshleman v. Martic Township, 152 Pa. 68 ; Elder v. Lykens Valley Coal Co., 157 Pa. 490 ; but testimony was admitted by the court from which the jury could have arrived at another measure of damages. Sons of the plaintiff were allowed to testify to the depreciation of the value of their father's property from 1890 until the day of the trial, due to the pollution of his stream by the defendants, and they fixed the annual depreciation at $10,000, or a total of $100,000 for

ten years. The question of depreciation of the value of the property was not properly before the jury; but, even if it had been, the opinions of these witnesses were reckless guesses, based upon no facts, and ought not to have been allowed to go to the jury, who may have been improperly and unduly influenced by them. These witnesses should have been examined on the question of damages from the standpoint of the tenth point submitted by the defendants, and the first and second assignments of error are sustained.

By agreement, the jury were instructed that they could return a verdict against one or all of the defendants as joint tort feasors, and the offer of the testimony of John Markle, taken in the case of John Geddig v. The Union Improvement Company, and the Jeddo Tunnel Company, Limited, was simply an offer to prove conclusively certain admissions that he had made. The testimony was admitted to affect only the witness who, at the time he testified, was president and chief engineer of the Jeddo Tunnel Company, Limited, which company is one of the defendants in this suit. The declarations of a party to the record, if against his interest, are always admissible, and, when the offer is to prove what he testified to in certain proceedings at law, it is an offer to prove conclusively what his admission was. Ordinarily, admissions as matters of proof are uncertain and generally liable to be contradicted; but when uttered words are taken down as testimony in a cause, there can be no mistake as to what the witness said, or as to what the admissions were. Markle was not a witness for the plaintiff, whom he ought to have subpœnaed, or whose testimony could be read only after proof to the court that the witness could not be produced; as stated, his deposition was offered and received as an admission of one of the defendants affecting only himself, and the cases brought to our notice as to the right to read the deposition of a witness do not apply. Markle's deposition was properly received, and the third and fourth assignments are not sustained.

The offers which are the subjects of the fifth, sixth, seventh, eighth, ninth, sixteenth, seventeenth and eighteenth assignments were made for the purpose of showing that there were other causes than the alleged injuries committed by the defendants that contributed to the impairment of the value of plaintiff's property and all should have been allowed. These assignments are sustained.

There was no error in rejecting the offer to prove that the Nescopeck Water Supply Company would agree to supply fresh water to the plaintiff at the rate of $15.00 per annum, in an amount sufficient to wash the wool in his factory. He had the right to use the water of Nescopeck creek as it naturally flowed over his own property, and private parties polluting it cannot urge, in mitigation of the damages they cause, that they offered to give him a substitute for it. The right to arbitrarily decline the use of any other water proffered by the defendants was as absolute as the right to use his own unpolluted water, and the tenth assignment is overruled.

As the measure of damages in this case is the expense of removing the coal dirt, unless the cost of such removal shall exceed the value of the entire property, the offers which are the subject of the eleventh, thirteenth, fourteenth and fifteenth assignments should have been allowed, for the real value of the property becomes important. The witnesses called were clearly competent to testify what it was, and the exclusion of their testimony was error. These assignments are sustained.

The testimony of D. J. McCarthy, that he had a conversation with the plaintiff, in which the latter stated that it was difficult to do business because of the scarcity of wool; that the farmers had practically quit raising it; that it was extremely difficult to get skilled labor, being remote from any town; that the machinery was old, and that he was old himself, ought not to have been stricken out, as it was most important upon the question, not only of the real value of the property, but as to whether its impaired value was due entirely to the injuries alleged to have been done by the defendants. The nineteenth assignment is sustained.

The twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth and twenty-sixth assignments are overruled. They all challenge the correctness of the charge of the trial judge and his answers to points submitted by the defendants, which are entirely free from error.

It is not needful that we say anything more. After the admission of the defendants of their liability to the plaintiff, the only question is the amount of damages that ought to be recovered. No errors were committed on the trial except those to which we have called attention. They will be avoided on a

second trial, and the jury will, in all probability, render a finding to which there will be no exception. Judgment reversed and a venire facias do novo awarded.