208     362
32 SC ²290

# Bachert, Appellant, *v.* Lehigh Coal and Navigation Company.

*Trial—Charge of court—Setting aside verdict.*

In the trial of an action against a mining company at the time of labor troubles, it is proper for the court to instruct the jury that their verdict should be founded on the evidence, to caution them not to be influenced by sympathy or prejudice, and to admonish them that a disregard of the latter instruction might lead to a setting aside of their verdict.

*Mines and mining—Obstruction of stream—Waters—Measure of damages.*

Where a stream is obstructed by refuse from a mine, prima facie the measure of damages is the cost of removing the refuse deposited.

*Mines and mining—Lessor and lessee—Negligence of lessee.*

A mining company which leases collieries to other parties is not liable for injuries to a stream caused by the lessees without the company's knowledge and consent.

*Evidence—Expert—Mines and mining—Waters—Deposit of refuse.*

In an action to recover damages for injuries to a farm and mill site caused by deposit of mine refuse, a person who has merely knowledge of the value of farm lands in the vicinity, is not competent to testify as to the value of the property as a whole, including both farm and mill site.

*Appeals—Assignment of error—Evidence.*

An assignment of error to the admission of evidence which does not set out the testimony admitted under objection, is not in accordance with the rules of court.

Argued Feb. 15, 1904.   Appeal, No. 146, Jan. T., 1903, by plaintiff, from judgment of C. P. Schuylkill Co., July T., 1898, No. 354, on verdict for plaintiff in case of Elias Bachert v. The Lehigh Coal and Navigation Company.   Before MITCHELL, C. J., FELL, BROWN, POTTER and THOMPSON, JJ.   Affirmed.

Trespass to recover damages for injuries caused by deposit of mine refuse.   Before MARR, J.

At the trial it appeared that the plaintiff owned a farm and a mill situated on Little Schuylkill river, and that the property as a whole had been injured by the deposit of mine refuse in the river and mill dam, and on the land.   There was evidence that there were other collieries besides those operated by the defendant from which the refuse came.   Certain of the collieries were owned by the defendant but leased to other parties.

Plaintiff presented this point:

6. Under the terms of the lease to the Beddalls and Gerber, the defendant reserves the authority to direct the lessees in regard to disposing the slate, dirt and refuse from the breaker and mines, and the defendant is bound to answer to the plaintiff in damages for any injury that has resulted to him by reason of the negligent acts of said lessees in placing culm or muck or either into Panther creek or in such close proximity thereto that the same has been washed into it by ordinary rains and carried down upon the plaintiff's land.   *Answer:* This point is refused, unless the jury finds under the evidence that the alleged acts of Beddall and Gerber were done in pursuance of the authority or command of the defendant company, but the mere relation of landlord will not make the lessor liable for the tortious or negligent acts of its tenants, the lessee. [1]

Defendant presented these points:

2. The defendant is only chargeable for its own acts and not for those of its predecessors in title to the land or its tenants. *Answer:* This point is affirmed, unless it is shown that these alleged acts are or have been committed under the authority or command of the defendant. [2]

5. The rule for the computation of damages in trespass cases for permanent injuries to land of the kind in suit, is the cost of removing the culm or coal dirt, unless the expense of removal

exceeds the value of the entire property, in which case the value
of the entire property is the limit of the measure of damages,
and in no event can there be a recovery in excess of the value
of the entire property for the permanent injury. Therefore,
there being no evidence in the case that the cost of removing
the culm or coal dirt from plaintiff's land, mill dams and race
would exceed the value of the entire property, the cost of
such removal must be the measure of plaintiff's damages.
*Answer :* The point is affirmed. [3]

8. Under the uncontradicted evidence in the case the plain-
tiff's mill was running up to the time of trial with power
furnished from water from his dam and race, and there is no
evidence in the case that the mill was ever stopped because of
want of water. *Answer :* The evidence shows that the mill
was running up to the time of trial, with power furnished
from his dam and water, but we decline to say that the mill
was never stopped because of want of water. [4]

The court charged in part as follows :

[Jurors in the trial of cases of this kind are apt to allow
their feelings of sympathy on one side, or their feelings, pos-
sibly, of prejudice upon the other, to induce them to render
verdicts which the law does not consider proper, because those
verdicts are frequently contrary to the law and contrary to the
evidence in the case ; therefore verdicts rendered in, that way
come to naught. They have to be set aside by this court. Or,
by an act of assembly now, a higher court can reduce the ver-
dicts where they are improper and not according to the evi-
dence.

The court of last resort has said in discussing these cases
that the trial judge (myself in this case would be the trial
judge) sits in some respects as a thirteenth juror, and it is his
duty to see that the verdict rendered by a jury should be in ac-
cordance with the law and in accordance with the weight of
evidence in the case, and not contrary to both or either. In a
very recent case the Supreme Court has used this language in
discussing a question of that kind. " It is the clear duty of
the court in peremptory language to hold the jury down to
lawful damages, and if they disregard the instructions of the
court, to set aside their verdict."

You see what my duty is unless you in reaching a verdict are governed by the evidence and by the law. If the court, the trial judge, in its instruction as to the law, makes a mistake or an error in its view of the law, there is a remedy. Either side can appeal to the higher court, and whatever error the trial judge has been guilty of can be corrected by the Superior Court, or the Supreme Court of this commonwealth, reversing the court below. You are the judges of the fact under the law. And if you render a verdict contrary to the weight of evidence and contrary to the law, under the peremptory instructions which the Supreme Court has laid down to us, it becomes my duty to set aside your verdict. Well, neither you nor the court want such a conclusion of a trial which has occupied now eight days. Therefore, knowing the tendency of jurors to allow their sympathies and their feelings to sway them in- rendering verdicts, I have thought proper to draw your attention to your duty under the evidence, and to our duty if you disregard your duty as we have been told it is our duty to do, by our courts of last resort.] [5]

[The Supreme Court of this state has said: " There is no doubt that the owner of coal lands may mine and remove his coal in a proper manner. If the drainage from the mines falls into and pollutes a stream of water, and injuriously affects lower riparian owners, this fact alone does not impose liability upon the owner of the coal." Bear that in mind, that if the drainage of the mines falls into and pollutes a stream of water, and injuriously affects lower riparian owners, in this case the plaintiff was a lower riparian owner, owning a property below where the Panther creek emptied into the Little Schuylkill river, that this fact alone does not impose liability upon the owner of the colliery.] [6]

[It is apparent to all of us that the mining operations of Schuylkill county are important not only to the owners of the collieries, but to all who live in this county; that if you were to shut up the mines of the county and stop mining operations, it might work a great deal of injury to most all other persons, or all other property, situated within the county. The great industry of the northern part of the county is its mining operations, and, practically speaking, without those mining operations in the upper end of the county a great deal of that terri-

tory would be useless, possibly almost uninhabitable. Therefore when you come to pass upon the negligence of the defendant, and upon the rights of the plaintiff, it is your duty to bear in mind that the defendant company has a legal right to mine its coal upon its own land. The very fact of there being collieries in this county is an important thing to the people who live in those neighborhoods. It is right for you to take that into consideration with the evidence in the case.] [7]

,[That washeries caused most of the pollution of the stream.] [8]

Verdict and judgment for plaintiff for $3,020. Plaintiff appealed.

*Errors assigned* were (1–8) above instructions, quoting them; (5–16) rulings on evidence in various matters.

*R. H. Koch*, with him *W. F. Shepherd*, for appellant.—It is error for a judge, in his charge, to use strong expressions of opinion or extravagant language, likely to prejudice the jury, or to comment in a way calculated to arouse their sympathies: Sampson v. Sampson, 4 S. & R. 329; Coal Co. v. Schuyler, 3 Leg. Gaz. 106; Burke v. Maxwell, 81 Pa. 139.

When a witness is shown to have personal knowledge of the market value of certain land or lands in the neighborhood of that in question, he is competent to give his opinion as to the value of said land, and as to the extent of damages thereto: Curtin v. Nittany Valley R. R. Co., 135 Pa. 20; Pittsburg, Virginia, etc., Ry. Co. v. Vance, 115 Pa. 325.

*George M. Roads*, with him *F. G. Farquhar*, for appellee, cited: Robb v. Carnegie, 145 Pa. 324; Penna. Coal Co. v. Sanderson, 113 Pa. 126; Seely v. Alden, 61 Pa. 302.

OPINION BY MR. JUSTICE FELL, March 7, 1904:

This action was to recover damages for loss sustained by the plaintiff, a lower riparian owner, by reason of the deposit of coal dirt in his mill dam and race and on a portion of his land. The plaintiff's property was on a bank of the Little Schuylkill river, from which his water power was derived. The defendant owned a number of collieries near the banks of Panther

creek, which flowed into the river some distance above. It was not disputed that the plaintiff's property had been injured by the deposit of refuse matter from collieries, and that this refuse matter came mainly from the creek and was carried into the river at times of unusually high water. The defendant denied that it had been negligent, and claimed that its mining operations had been carried on in the most skilful manner, and it showed that it had built retaining walls by the side of its culm banks and had constructed settling dams, mud banks and other appliances to protect Panther creek and its tributaries, and had spent a half million dollars in its efforts to prevent refuse from its collieries from passing into the river. The controverted questions at the trial were (1) whether the defendant was liable at all; (2) if liable, for what part of the loss sustained, since there were collieries in the valley of Panther creek not operated by it; (3) the measure of damages, whether the cost of removing the deposit of refuse or the depreciation in the value of the property.

The main objection urged to the charge is that it tended unduly to lead and control the jury, and was prejudicial to the plaintiff. In the part objected to the learned judge told the jury that their verdict should be founded on the evidence, and cautioned them not to be influenced by sympathy or prejudice, and in clear and distinct but temperate language admonished them that a disregard of this instruction might lead to a setting aside of their verdict. This was followed by a statement of the rights of each of the parties, the ground of the defendant's liability if any existed, and the measure of damages in the event of a recovery. It was the right of the judge to give this caution, and in view of the passions and prejudices that grew out of the labor troubles in the anthracite coal regions in 1902 and which existed at the time of the trial, it may be said to have been his duty to charge as he did. In the recent case of Stevenson v. Ebervale Coal Co., 203 Pa. 316, it was said : " It was the clear duty of the court below in peremptory language to hold the jury down to the lawful damages, and if they disregarded the instruction to set aside the verdict. What the plaintiff had a right to ask was that he be made whole, not rich. It was the duty of the court to see that this result and this alone was reached." This is always the rule.

It was much better to reach a proper result by an instruction in advance of the verdict than by granting a new trial after it had been rendered. No question of fact was taken from the jury, and there was no attempt to control them except by pointing out their plain duty and advising them that their action was subject to review, and that it was not in the power of a jury to plunder at will. The charge as a whole was a very clear and able presentation of the questions involved and of the law applicable to them, and we see no valid ground of objection to any part of it.

Prima facie the measure of damages was the cost of removing the refuse deposit, and the instruction on this subject was in accordance with the rule stated in Stevenson v. Ebervale Coal Co., 201 Pa. 112. The defendant was not answerable for the acts of its lessees who operated collieries in the basin of Panther creek done without its knowledge and consent. The objection was properly sustained to the plaintiff's witness called as an expert as to the value of the property, since his knowledge was limited to the value of farm lands in the vicinity, and the property was to be considered as a whole, including both the farm and the mill site. The assignments to the admission of expert evidence offered by the defendant are not in compliance with the rule that the testimony admitted under objection should be set out in the assignment.

The judgment is affirmed.