14078

DYSON v. COMMONWEALTH LIFE INS. CO. OF LOUISVILLE, KY.

(180 S. E., 475)

*Messrs. Carlisle, Brown & Carlisle,* for appellant,

*Messrs. E. N. Johnson* and *C. E. Daniel,* for respondent,

June 4, 1935.

The opinion of the Court was delivered by Mr. Justice Fishburne.

On February 16, 1931, the Commonwealth Life Insurance Company, in consideration of the payment of the weekly premium therein provided, issued what is known as an Industrial Insurance Policy or contract on the life of Vander Dyson, the plaintiff's son, numbered 1,047,067, agreeing to pay to the plaintiff, the beneficiary named therein, the sum of $250.00 upon the death of the insured.

Vander Dyson, the insured, died on January 21, 1932, and this policy, together with a receipt signed by B. S. Moore, the defendant's agent, dated December 11, 1931, for $1.25, were found among his effects. This receipt was given for the payment of premiums, and the agent had written thereon in pencil, "Paid in full five weeks." As will be hereafter shown, it was a disputed issue as to which policy contract this receipt applied.

Plaintiff personally notified the defendant, at its local of-

fice in Spartanburg, through its district superintendent, D. T. Riddle, of the death of the insured, and presented to him the policy and the above receipt, and demanded payment of the policy. Payment was refused upon the ground that the policy had lapsed, and with the further alleged statement that the receipt showing payment of premiums did not apply to this policy, but referred to another policy for which the insured had made application prior to his death. Plaintiff, in the two trials hereafter adverted to, denied that this statement was made to him, and testified that he knew nothing of the existence of any other policy on the life of the insured until the witnesses, Riddle and Moore, for the defendant, so testified at the trial in the County Court. It is in evidence that the company offered to return the $1.25 covered by the receipt. Many of the allegations of fraud in the instant case are predicated upon this alleged suppression and concealment, and the testimony adduced at both trials is widely divergent.

Thereafter, on April 19, 1932, plaintiff brought suit against the defendant in the County Court of Spartanburg County to recover the sum of $250.00 on Policy No. 1,047,-067. As a bar to recovery, defendant, in its answer, alleged that the policy had lapsed, but made no reference to the existence of any other policy. The cause was heard at Spartanburg on December 1, 1932, and at the trial plaintiff introduced in evidence the aforementioned policy and the receipt of December 11, 1931, contending that the receipt represented payment on this policy, and on no other, and that if so applied, the policy would have been in force until the date of Vander Dyson's death. In that trial the defendant established its defense by the testimony of two witnesses: B. S. Moore, its former agent and superintendent, but who was not in its employ at the date of the trial, and D. H. Riddle, who was then, and throughout the period covered by this litigation, its district superintendent. The jury returned a verdict for the defendant, from which no appeal was taken.

The evidence of these two witnesses was offered by the defendant to prove that the policy upon which the action was based had lapsed; that the premium receipt dated December 11, 1931, referred to another policy issued by the defendant to the insured, and their testimony tended to prove specifically the existence of such other policy.

Thereafter, on May 5, 1933, the plaintiff commenced a second action against the defendant, which is the case here now on appeal, for the recovery of damages, actual and punitive, for the alleged fraudulent breach of a policy contract of life insurance issued during the fall of the year 1931, and based upon the receipt showing premium payments, dated December 11, 1931. After reciting the issuance of the policy first sued upon, the death of the insured, Vander Dyson, the presentation of the said policy, and the receipt of the defendant for payment, and its refusal to pay upon the ground that the policy was lapsed, and the company's alleged claim that its only obligation to the plaintiff was the return of the $1.25 represented by the receipt, plaintiff alleges, in Paragraph 6: "That persisting further, and to advance its scheme and purpose to fraudulently breach its contract with the plaintiff, and to deprive him of his rights thereunder, and to subject him to the delay and expense of litigation, the defendant, instead of informing plaintiff that there was another policy than the one in his possession, to which the premium represented by the receipt applied, and which was in force at the time of his son's death,—continued its fraudulent suppression of its knowledge of the contract, and the plaintiff's rights thereunder, up to the trial of a suit brought on the policy that plaintiff had in his possession."

The defendant answered the complaint, admitting the formal allegations thereof, and alleged in substance that a policy of insurance was issued on November 2, 1931, on the life of plaintiff's son, with the estate of the insured as beneficiary, but that said policy was never delivered, and was not

in force at the time of the death of the insured, Vander Dyson.

This cause came on for trial at the January, 1934, term of the Court of Common Pleas for Spartanburg County, before his Honor, Judge E. C. Dennis, and a jury, resulting in a verdict for the plaintiff against the defendant in the sum of $700.00 actual and punitive damages. The defendant made timely motions for a nonsuit, directed verdict, and a new trial, which his Honor refused, and from judgment entered on the verdict has appealed to this Court upon numerous exceptions appearing in the record, but in its printed argument reduces the points at issue to four questions, which we will discuss in sequence: "1. Was there error in refusing to require plaintiff to elect whether he would proceed to trial as in contract or in tort? (Exceptions 1, 11, and 13.)"

When the case was called, and before proceeding to trial, the defendant in due time made a motion, as shown by the record, to require the plaintiff to elect "whether he would proceed as in tort or as in contract on the complaint." After hearing argument, his Honor, Judge Dennis, in passing upon the motion, held that the cause of action alleged in the complaint "was for a fraudulent breach of a contract, and that a fraudulent breach of a contract is a tort." We think the ruling of the Circuit Judge was correct. See *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232, 3 Ann. Cas., 407. These exceptions are overruled.

"2. Did the Presiding Judge err in admitting in evidence, over defendant's objection, a transcript of the testimony of two of defendant's witnesses at a former trial between the same parties involving a suit on another policy of insurance? (Exceptions 2, 3 and 4.)"

This point is covered by Exceptions 2 and 3, and it will make the issue clearer to quote herewith the grounds stated in Exception 2, as follows:

"It is respectfully submitted that his Honor, the Presiding Judge, erred in overruling defendant's objection to the introduction in evidence by plaintiff of a transcript of the testimony of the witness, B. S. Moore, on a former trial between the parties to the action, the error being that said transcript of testimony was incompetent and inadmissible, in that

"(a) The witness, B. S. Moore, was present at the trial, and could have been called as a witness by plaintiff,

"(b) The testimony of the witness on the former trial could not be relied on to establish affirmatively the insurance contract alleged in the complaint,

"(c) The testimony was not introduced to contradict the witness, but to prove the plaintiff's case,

"(d) The issue in the previous trial being whether the policy there sued on had lapsed, and the question whether the premium represented by the receipt for $1.25 applied to a policy payable to insured's estate or to some other beneficiary not being material in the previous case, no estoppel by reason of Moore's testimony could arise against defendant upon which could be based a contract of insurance with plaintiff as beneficiary."

Exception 3 contains the identical wording of Exception 2, except that the witness D. T. Riddle is referred to, and not B. S. Moore, and, too, Subdivision (d), appearing in Exception 2, does not appear in Exception 3.

In support of the issue raised by this exception, the appellant cites the case of the *State v. Rogers,* 101 S. C., 280, 85 S. E., 636, 637, where the Court held that the well-established rule in civil cases in this State is that the evidence of a witness who has been examined on a former trial, and where the point in issue is the same, may be introduced on a second trial: "(1) Where the witness is dead, (2) insane, (3) beyond seas, and (4) where the Court is satisfied that the witness has been kept away by the contrivance of the opposite party," and in line with this well-established rule calls our

attention to the following cases: *McCall v. Alexander,* 84
S. C., 187, 65 S. E., 1021; *Wells v. Drayton,* 1 Nott &
McC. (10 S. C. L.), 409, 411; *Petrie v. Railroad Company,*
29 S. C., 303, 7 S. E., 515.

The rule of evidence, however, announced in these deci-
sions has no application here, because the evidence of Moore
and Riddle, given in the former case, entered this trial
through another door. It clearly appears from the record of
the trial in the instant case that the authenticated transcript
of their evidence given at the former trial was admitted up-
on the ground that such testimony constituted admissions of
the defendant going to prove specific facts, relevant and
competent in the trial of this case, to be given such weight
as the jury might see fit to accord it.

These two agents were not ordinary witnesses, and in
applying principles of law applicable to this question it is
necessary to keep in mind their relationship to the defend-
ant. Their testimony does not come within the category of
testimony given by "third persons." It is elementary that a
corporation can act and speak only through its officers and
agents, and that is the relationship which these witnesses
bore to the defendant corporation. So that when they tes-
tified in the former trial, their words were the words of the
defendant, and their voice was the voice of the defendant,
and under the facts in this case there was no legal difference
in their identity.

It follows that their testimony, with whatever admissions
it contained, was the testimony of the defendant itself, and
must be so considered.

The question now to be considered is: "Was the de-
fendant bound by its admissions embraced in the tes-
timony of these two witnesses at the former trial,
and was there error in admitting such transcript as evidence
on the trial of the instant case?

The general rule is well expressed in the following quota-
tions from The Modern Law of Evidence (Chamberlayne),

Vol. 2, § 1268: "Statements contained in the evidence given by a party as a witness, or adopted by him, are primary in their nature, and constitute informal judicial admissions which affect the party, not only in the trial where given, but in any other hearing of a suit even upon appeal. Such declarations are equally competent, unless the matter is regulated otherwise by statute, in a subsequent case, and although the parties, except the original declarant, are different in the two actions."

In an editorial note under the foregoing text, we find the following:

"The admission is competent, though the witness is present in Court and the opposite party has a right to compel him to testify," citing *Lorenzana v. Camarillo,* 45 Cal., 125; *Buddee v. Spangler,* 12 Colo., 216, 20 P., 760; *Carter v. Edwards,* 16 Ind., 238; *Woods v. Gevecke,* 28 Iowa, 561; *German Nat. Bank v. Leonard,* 40 Neb., 676, 59 N. W., 107; *McAndrews v. Santee,* 57 Barb. (N. Y.), 193; *Stevenson v. Ebervale Coal Co.,* 201 Pa., 112, 50 A., 818, 88 Am. St. Rep., 805.

"The testimony given by a party at one trial of a case may be used against him as an admission on a subsequent trial. So also testimony given by a party on a trial of one case is competent against him as an admission on the subsequent trial of another action, whether he was a party to such former action or merely a witness therein. * * * The former statement must of course be relevant in the action in which it is offered." 22 C. J., 343.

The case of *Wilson v. Gordon,* 73 S. C., 155, 53 S. E., 79, 80, is cited by the author in support of the foregoing text quoted from Corpus Juris, and is very much in point. In that case the question was whether there was a mutual contract to make wills between Jane L. Gordon and her sister, Mary Gordon. Mary Gordon had predeceased her sister Jane, and her will was proved in solemn form in the Probate Court. The testimony of Jane L. Gordon taken by the

Probate Judge in proving in solemn form the will of Mary Gordon was admitted in a later trial as a declaration against her right to revoke a will previously made by her, and presumably made in conformity with the mutual contract to make wills, entered into between the sisters. The Court used this language: "We do not perceive on what grounds this evidence could be regarded incompetent, and none has been suggested in argument."

Of stronger force as applied to the facts in this case is the case of *Martin v. Ragsdale,* reported in 71 S. C., 67, 50 S. E., 671, where the question arose as to whether or not a tract of land had been purchased by one Daniel D. Fenly with trust funds. The plaintiffs contended that it had been so purchased, and thereby became subject to the limitations of the deed of trust in which Fenly was named as trustee. We quote:

"And to prove that they offer in evidence the testimony of Daniel D. Fenly, delivered in 1882, before a referee, in a cause entitled *Mary A. Pearson et al. v. H. H. Yongue,* 25 S. C., 162. Without that testimony, there is no sufficient evidence to conclude that the land in issue is subject to the limitations aforesaid. With that testimony, there is sufficient evidence so to conclude.

"So that the first issue of law presented is the competency of Fenly's testimony in this action. The only objection urged against it is that it was delivered in an action to which the defendants here were not parties, and therefore without the privilege of cross examination by the defendants, for it is the lack of testing by cross examination which generally renders a sworn statement incompetent evidence against an objecting party thereto. There is no other reason. The former action, in which Fenly's testimony was delivered, was betwixt practically the same plaintiffs as now sue and one Hazel H. Yongue, a remote assignor of the Ragsdale defendants, and the subject of the two actions was practically the same. See 25 S. C., 162. In that action Fenly was

cross examined, not by the defendants, it is true, but by those who had the same interest which the defendants now have. To ignore Fenly's testimony, therefore, would be to sacrifice a principle rather than execute a rule. I am of the opinion, therefore, that Fenly's testimony is competent, and furthermore that it establishes the fact that the land in issue is held by·the title expressed in the aforementioned deed of trust."

At the trial in the instant case, the two witnesses, Riddle and Moore, who testified in the former trial, and upon whose testimony the defendant relied, were present in the courtroom, and were actually sworn and testified in this case for the defendant, so that the defendant in the second trial, in a case involving substantially the same issue, had the benefit of any explanatory or qualifying statements which these witnesses might choose to testify to. And the defendant having committed itself in the former trial to a definite course of conduct by its sworn testimony tending to prove, and designed to prove, a specific state of facts, to wit, the existence of another policy, would be bound by any admissions relative thereto which were made in the former trial in this case; as heretofore stated, the two witnesses being deemed for the purposes of this discussion the defendant itself. It follows that the transcript was properly admitted.

In support of the conclusion herein reached, many analogies may be found in the textbooks and reported cases.

We quote the syllabus—which is the correct statement of the holding of the Court—in the case of *Providence Machine Company v. Browning,* 70 S. C., 148, 49 S. E., 325: "Testimony of a party taken *de bene esse* on his own motion and used at a former trial, may be introduced by the adverse party at a second trial; but the fact that such evidence was afterwards admitted as a declaration of the party against interest, cures the error of ruling it out in first instance."

We also quote the syllabus in the case of *Willis v. Tozer,* 44 S. C., 1, 21 S. E., 617: "In action of debt on a judgment, the unverified answer of defendant in the former action may be offered against the defendant, as evidence of the admissions therein contained."

It would unduly lengthen this opinion to further cite authorities along this line, of which there are many. We can see no sound reason why the transcript of testimony, the introduction of which was objected to, should not have been used as *prima facie* evidence to affirmatively prove the allegations of the complaint.

The transcript referred to was admissible upon another ground, which, as to the witness Moore, would meet the contention that at the time of the trial of the first case he was no longer in the employ of the Commonwealth Life Insurance Company, and for that reason no agency as to him existed. In other words, that he would come in the category of "third persons."

We think the following cited authorities on this point are applicable, and are sound in reason and common sense: "Testimony of third persons as witnesses in another case are admissible against a party if the latter is bound thereby because of agency, joint or common interest, or his having vouched for their credibility and impliedly asserted the fact by calling them as witnesses; but not otherwise."

In Chamberlayne's Modern Law of Evidence, Vol. 2, p. 1606, § 1265, the rule is thus stated: "A somewhat more confused question is presented when inquiry is made as to what is the probative or other effect, in this connection, of the adoption by a litigant of the oral or written evidence originally given by another. A party may, in offering the testimony of a third person, so affirm the truth of its statements as to adopt them as his own. They thereupon become competent as his admissions, and may be used as such in a subsequent suit. This is equally true whether the testimony is oral or in writing; for the obvious reason that the wit-

ness merely corroborates or establishes the assertion of the party himself. Some limitations, however, must in fairness be placed upon the effect on the party of the statements of a witness which he offers to the Court. * * * Only when the witness testifies as desired by the party calling him, bringing out such facts as the party desires to have appear, may his statement be regarded as an admission of the party."

The foregoing statement of the rule should be taken in connection with the following qualification, found in an editorial note appended to the foregoing text, and quoted from *Richards v. Morgan,* 10 Jur. (N. S. pt. 1), 559, 565 (1864), per Cockburn, C. J.: "The admissibility of the deposition is limited by the qualification to which, in my view, it should be subject, namely: that it can only be used against the party to the extent of the purpose for which it was used by him in the former suit."

The following language is used in the *West Virginia case* of *Keyser Canning Company v. Klots Throwing Company,* 98 W. Va., 487, 128 S. E., 280, 283: "Of course, a party is not bound by everything his witness may say on the stand, as an admission on his part, particularly where he does not know before hand what the witness is going to say; but if he puts a witness on the stand, as defendant did in this case, to prove a particular fact in issue, he is bound thereby as an admission on a subsequent trial. 2 Wigmore on Evidence (2d Ed.), § 1075, p. 578; *Clark v. Clark,* 70 W. Va. [428], 433, 74 S. E., 234; *Roberts v. Crouse,* 89 W. Va., 15, 108 S. E., 421; 22 C. J., 341, 342; 16 Cyc., 975."

We will consider together the other two questions raised by appellant.

Question 3 is: Was there any proof in the case to submit to the jury establishing the contractual relation between the parties which the defendant, as alleged, has concealed from the plaintiff? (Exceptions 8 and 9.)

Question 4. Assuming that plaintiff proved the existence of the thing concealed as alleged, was there any proof of fraudulent concealment to submit to the jury, capable of supporting a verdict of punitive damages against the defendant? (Exceptions 8, 9, and 12.)

Both of these questions must be answered in the affirmative. A careful and most painstaking reading and consideration of the entire record in this case convinces us that the learned Circuit Judge committed no error in submitting this case to the jury.

An opinion was prepared and filed in this case, but remittitur was held up on a petition for rehearing; the petition was granted, and a reargument had. This opinion is now substituted in place of the prior opinion, and the other is withdrawn from the file.

All exceptions have been carefully passed upon, and must be overruled.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER, and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.