[No. 3,308.]

## WILLIAM G. GREEN, MICHAEL GREENY, AND FRANK LOVELY *v.* THE OPHIR COPPER, SILVER, AND GOLD MINING COMPANY.

ERRONEOUS INSTRUCTIONS TO JURY.—A judgment will not be reversed on account of erroneous instructions to the jury, when it is apparent that the verdict would have been the same with correct instructions.

WHEN ERRONEOUS INSTRUCTIONS DO NO HARM.—If the plaintiff is entitled to a verdict of the jury on the evidence, an erroneous instruction to the jury on a question of law does not prejudice the defendant.

DECLARATIONS OF AGENT OF CORPORATION AS EVIDENCE.—If the President of a mining corporation is selected on behalf of his company to point out to others the mining ground claimed by the corporation, and in pointing it out states that certain ground in view is not claimed by the corporation, his declarations may be afterwards offered in evidence against the corporation.

APPEAL from the District Court of the Fourteenth Judicial District, County of Placer.

During the trial of this cause, plaintiffs offered testimony tending to prove that the defendant and a company called

the Good Friday Company had a law suit in the District Court of Placer County, in 1867, concerning the property now claimed by defendant, and called the Good Friday ground; that during the progress of the trial an order was made that the jury then summoned to try the case proceed to view the premises in dispute; that Daniel Choate was selected on the part of the defendant, the Ophir Copper, Silver, and Gold Mining Company, to point out the ground claimed by them; that said Choate was then the President of said company; that he did proceed with the jury, and did point out the grounds then claimed by the Ophir Copper, Silver, and Gold Mining Company; that G. McCready and H. Baldwin were two of the jury at that time.

Plaintiffs then called the said McCready and Baldwin, who each testified that, while on the ground, the said Choate, in pointing out the premises claimed by his company, did point out the ground now in dispute, and did then and there, while so upon the ground upon said business, say, that the Ophir Copper, Silver, and Gold Mining Company did not claim that ground as part of their ground or claim.

The defendant's attorney objected to the testimony as irrelevant, and because the defendant was not bound by the declaration made by its President as to its ownership or claim of property, and that such declarations are not admissions which could take away defendant's property.

Plaintiffs' attorney then stated that it was not claimed by the plaintiffs that such was the case, or that the President could, by any such declaration, affect the rights of the corporation; but that the testimony was offered as a declaration by an agent and officer of the corporation, while on the ground, in and about the business of the corporation, as to the extent of their claim, and the boundaries thereof.

The Court admitted the testimony for that purpose, to which ruling defendant excepted.

*Charles A. Tuttle,* for Appellant.

The admission of Choate's declarations about defendant's claim was erroneous. It does not appear that either plaintiffs or their grantors ever heard of Choate's declarations or acted upon them. Choate may have been mistaken, and the corporation should not lose its property through his error. He was only one of many stockholders. He was sent there to point out the correct lines. If by mistake, or purposely, he pointed out wrong lines, the corporation should not be deprived of its honestly acquired property. (Greenleaf on Ev., Vol. 1, Sec. 108, Note 2.)

*Jo Hamilton,* for Respondents.

The admission of Choate's declaration was proper. It was the declaration of the agent while in the act of asserting the possession of the principal as to the limits and extent of his boundaries. I admit that the testimony was not conclusive; like every other declaration it was open to explanation.

If, to illustrate, the agent was ignorant, or acted fraudulently, such fact would tend to weaken the effect of the testimony. All we even claimed for it was that it was a declaration of the agent and officer of defendant, while on the ground, in and about the business of his principal. The declarations were only admissible for that purpose and extent. (*Ward* v. *Preston,* 23 Cal. 468; Greenleaf on Ev. Vol. 1, Sec. 113.)

By the Court, BELCHER, J.:

This is an action to quiet the title to a quartz mining claim in Placer County. In their complaint the plaintiffs allege that they and their grantors have owned and been in the possession of the mine, commonly called the " Green Mine,"

but sometimes known as the "Fred. Mallet Mine," since the month of October, 1867; and that the mine extends in length eleven hundred and thirty-one feet and five inches, and in width, including dips, angles, and variations, one hundred feet on each side of the ledge; that the defendant claims to own the whole mine, and has made application for a patent therefor from the Government of the United States.

In the answer, the defendant alleges that it has owned and been in the possession of a mineral-bearing ledge of quartz, known as the "Granite Edge Lode, or Ledge," since the year 1863; and that its claim extends in length more than two thousand feet, and has a width, including spurs, dips, variations, and angles, of three hundred feet on each side of the ledge; that the claim described in the complaint, with the exception of a small portion at the west end thereof, is all within the boundaries of the defendant's claim, and is owned by the defendant, and not the plaintiffs.

From the testimony submitted on the part of the plaintiffs it appeared that in October, 1867, J. H. Mallet and his associates located upon a ledge known as the "Peter Walter Ledge" a claim of one thousand feet in length, by posting upon the ledge, in accordance with the custom of the miners in that district, a notice by which they claimed five hundred feet each way from the notice; that they immediately commenced work by sinking a shaft on the ledge near the notice, and continuously prosecuted the work till the month of June, 1868, when they sold and conveyed to the plaintiffs; that the plaintiffs had worked continuously on the ledge from the time of their purchase to the time of the trial, and had claimed the ground during all the time under the said conveyance adversely to the defendant and to all others, and had expended about thirty thousand dollars in sinking shafts, running levels, and erecting machinery thereon.

The plaintiffs' testimony also tended to prove that the

plaintiffs' ledge extended the whole distance claimed by them, and was a distinct and separate ledge from that claimed by the defendant; that the two were parallel ledges, and that by the custom of miners in that district locators of quartz ledges were entitled to one hundred feet on each side of the ledge for convenience of working.

On the part of the defendant it was claimed, and the testimony tended to prove, that in the year 1863 certain parties located the ledge now claimed by the defendant, for the purpose of mining for copper, and shortly thereafter conveyed it to the defendant, a corporation then formed by them; that, by the custom of miners, locators of copper mining claims in that district were entitled to three hundred feet on each side of their ledge or vein for the purposes of working the ledge, but that a location only covered one ledge or vein; that the plaintiffs' ledge was within the three hundred feet claimed by the defendant upon the northerly side of its ledge; that, after being prospected, the defendant's ledge was found not to contain copper, but to contain gold-bearing quartz, and the owners then determined to hold and work it as a gold mine ; that the defendant had continued to perform work on the claim every year since its location, and had sunk shafts, run tunnels, and erected machinery thereon at an expense of more than fifteen thousand dollars.

The defendant's testimony also tended to some extent to show that the plaintiffs' and defendant's ledges were not separate parallel ledges, but that they converged together and would meet and unite or cross each other within the limits of the plaintiffs' claim.

The plaintiffs recovered judgment, and the appeal is from the judgment and from an order denying a motion for a new trial.

1. It is shown by a clear preponderance of the evidence that the plaintiffs' ledge is a different one from that of the defendant, and that the two are parallel and not converging

ledges. Looking at the testimony as it is presented to us upon this question, we do not see how the Court below could have refused to grant a new trial if the verdict had been for the defendant. If it be conceded then that the Court erred in its instructions to the jury in reference to the Statute of Limitations, it was an error which did not prejudice the defendant. And it is the settled rule of this Court not to. reverse judgments for errors in instructions when it is apparent that the verdict would have been the same with correct instructions.

2. Nor do we see any error in admitting the testimony of McCready and Baldwin. It was quite competent, we think, to prove that in a former trial between the defendant and another company, in reference to the property now claimed by defendant, the jury were ordered to view the premises, and that the President of the defendant was selected on behalf of his company to accompany them and point out the ground claimed by the defendant; and that being upon the ground for that purpose he pointed out the ground now claimed by the plaintiffs, and said his company did not claim it as a part of its claim. This testimony was relevant and tended to show that the ledge in controversy in this action was not then owned or claimed by the defendant.

Judgment and order affirmed.