[Civ. Nos. 842 and 844.    Third Appellate District.—July 24, 1911.]

## MARY J. SPEAR, Executrix, etc., Respondent, v. UNITED RAILROADS OF SAN FRANCISCO, Respondent, and WELLS, FARGO & COMPANY, Appellant—No. 842.

## MARY J. SPEAR, Executrix,. etc., Respondent, v. UNITED RAILROADS OF SAN FRANCISCO, Appellant, and WELLS, FARGO & COMPANY, Respondent—No. 844.

NEGLIGENCE—COLLISION BETWEEN EXPRESS WAGON AND ELECTRIC CAR—INJURY TO THIRD PARTY—INADMISSIBLE EVIDENCE—CROSS-EXAMINATION OF CONDUCTOR—INEXPERIENCE OF MOTORMAN—ERROR NOT PREJUDICIAL.—In an action by a third party to recover damages resulting from an alleged negligent collision of an express wagon with an electric car of a street railroad company, upon the trial of which the conductor testified to the facts concerning the collision, it is held that it was not proper cross-examination to inquire as to the inexperience of the motorman on the car, nor was such evidence relevant to the issue as to whether he was negligent at the particular time of the collision in controversy; but that, in view of the evidence as to the total experience of the motorman, and as to his general competency, it cannot be said that the street railroad, as an appellant, was prejudiced by such error.

ID.—INCOMPETENT TESTIMONY—IRRESPONSIVE AND IRRELEVANT ANSWER—OPINION OF NONEXPERT—QUESTION FOR JURY UPON FACTS.—It is held that the testimony of a witness which was irresponsive to a question asked, and was irrelevant, and who testified to his opinion, not that of an expert, from the facts stated, to matter which was a question for the jury, was wholly incompetent.

ID.—IMPROPER MOTIONS TO STRIKE OUT—GROUNDS NOT STATED—JUST RULE OF PRACTICE.—Where the counsel for the street railroad merely made general motions to strike out each part of such incompetent testimony, without stating any grounds for the motion, upon its appeal it cannot be heard to complain of error in denying its motions. It is a just rule of practice to require a party objecting to a question, or moving to strike out testimony, to state the grounds of his objection or motion. This is only just to the trial judge, and imposes no hardship on the complaining party.

ID.—COMPETENCY OF WITNESSES FOR EXPRESS COMPANY—NEGLIGENCE OF RAILROAD.—Although there is no affirmative allegation in the answer of the express company as to the negligence of the street railroad, yet where there is no denial therein of such negligence, it was not error for the court to permit witnesses for the express

company to testify as to negligence on the part of the street railroad.

ID.—EFFECT OF PLEADINGS—IMPLIED AVERMENT OF NEGLIGENCE—DENIAL OF NEGLIGENCE—AID OF PLAINTIFF.—It is held that the answer of the express company not denying the negligence of the street railroad, alleged in the complaint, impliedly averred it, without the necessity of repeating the plaintiff's averment, and having denied its own negligence, a just judgment for the plaintiff cannot be disturbed, because testimony in its favor against the street railroad was offered by the express company rather than by the plaintiff.

ID.—IRRELEVANT EVIDENCE—WARNING BY DIFFERENT MOTORMAN—SERIOUS ERROR.—It is held that evidence of a warning given by another motorman at a different time and place to the driver of the express wagon, on the same day, was irrelevant to the issue whether the motorman in charge of the car on the occasion in controversy was chargeable with negligence in not giving such warning, as to which the evidence was conflicting, and that an objection to such evidence as irrelevant should have been sustained; and that the error was a serious one, as its effect upon the minds of the jury cannot be determined.

ID.—INSTRUCTION AS TO LAST CLEAR CHANCE IN FAVOR OF EXPRESS COMPANY NOT PREJUDICIAL—VERDICT AGAINST BOTH PARTIES.—An instruction based upon the "last clear chance" as between the express company and the street railroad, and seeking to limit plaintiff's recovery to the street railroad, was not prejudicial to the latter, where the jury found a verdict against both parties defendant.

ID.—INSTRUCTION AS TO JOINT LIABILITY—CONFLICT NOT PREJUDICIAL.—It is held that an instruction as to the joint liability of both defendants in case of concurring negligence producing the result of plaintiff's injury is not ground for complaint, as inconsistent with the instruction as to the "last clear chance," as between the defendants, in view of all the instructions taken together, in the light of the verdict actually rendered.

ID.—ERROR IN REFUSING TO INSTRUCT AS TO CONTRIBUTORY NEGLIGENCE. Although it cannot be affirmed from the evidence by this court that the plaintiff was guilty of contributory negligence as matter of law, yet as there is some evidence upon which an instruction relative to contributory negligence might be based, it was error to refuse such an instruction.

ID.—REFUSAL OF REQUEST—CAUTION AGAINST UNDUE SYMPATHY—DISCRETION OF COURT.—It is held that it was not prejudicially erroneous for the court to refuse a requested instruction, cautioning the jury against the undue influence of sympathy, and exhorting them to regard the law with equal favor toward the corporation and the individual. Many such ethical and didactic suggestions might be made without impropriety to the jury, but a wise discretion as to

that must be left to the trial judge, who is not required to go beyond the essential legal principles involved in the action.

ID.—REQUEST AS TO LEGAL DUTY OF MOTORMAN TO RING BELL UNDER ORDINANCE.—It is held that a requested instruction, based upon a city ordinance, that "It is not the duty of a motorman to ring his bell or gong except to give the usual signal for starting, and except when his car is about to cross an intersecting street. There was therefore no duty imposed upon the motorman to ring his bell between Oak Grove avenue and Fifth street, and if he failed to do so, such failure did not constitute negligence," should have been given.

ID.—DANGER OF MISAPPLICATION OF RULE AVOIDED—SPECIAL CIRCUMSTANCES REQUIRING WARNING.—The danger of a misapplication of the statutory rule was avoided by an instruction that, in the special emergency when a wagon is on the track ahead of the car, it is the duty of the motorman to look ahead, and if he observes such a vehicle upon the track, to give warning, slow down and put the car under control to avoid a collision. The two instructions would have fairly presented the law, and left the jury to determine whether the circumstances required the ringing of the bell, though the failure to do so is not necessarily proof of negligence.

ID.—CONSISTENCY BETWEEN SPECIAL FINDINGS OF JURY AND GENERAL VERDICT.—It is held that there is no inconsistency between the special findings of the jury and the general verdict, that the court should not strain the language of a finding to make out a case of conflict, but that the findings should be reconciled if it can reasonably be done.

ID.—CONSTRUCTION IN SUPPORT OF GENERAL VERDICT.—Obscurities and apparent inconsistencies in the findings are to be given weight in favor of rather than against the general verdict. If the findings are open to double construction, that construction should be adopted which upholds the general verdict. A general verdict upon issues and evidence properly submitted is presumed to have decided every fact or deduction therefrom essential to support it, while a special verdict must be limited and controlled by its specific terms.

ID.—SPECIAL ISSUES SUBMITTED BY EXPRESS COMPANY.—The street railroad has no cause of complaint because special issues were submitted by the express company bearing upon the question of negligence as between them, rather than on the request of plaintiff.

ID.—ORDER DENYING NEW TRIAL—NEWLY DISCOVERED EVIDENCE OF MOTORMAN—STRONG SHOWING BY RAILROAD—NEW TRIAL GRANTED. Though ordinarily an order denying a new trial for newly discovered evidence is in the discretion of the court and will not be disturbed, yet where there is a strong showing that by loss of the records of the street railroad by fire the motorman in question, who had left the employ of the defendant as a result of the

fire, could not be traced or found in time for the trial and was absent therefrom, and his evidence as stated in the affidavit would negative his negligence, it is held that a new trial should be granted to allow its introduction, leaving it to the jury to determine its weight.

ID.—APPEAL OF EXPRESS COMPANY—RELIANCE ON "LAST CHANCE DOCTRINE" AS TO RAILROAD—APPLICABILITY LIMITED TO PERSON INJURED.—Upon appeal of the express company against the plaintiff, it cannot rely upon the "last chance doctrine" as between itself and the street railroad. That rule strictly applies only in favor of the person who is injured, notwithstanding his contributory negligence.

ID.—RULE WHERE TWO ARE JOINTLY CHARGED WITH NEGLIGENCE—DIFFERING DEGREES IMMATERIAL.—Where two are jointly charged with negligence, it is only necessary for the plaintiff to show that both contributed to the injury, notwithstanding the act of one may have been wanton and reckless, and that of the other simply manifested the want of ordinary caution. The plaintiff may recover against either or both of the defendants whose concurring acts of negligence united in producing the injury.

ID.—ABSENCE OF FINDING AS TO CULMINATION OF NEGLIGENCE OF EXPRESS DRIVER—PRESUMPTION.—Where there is no special finding upon the question as to whether or not the negligence of the driver of the express wagon ended or culminated when he turned toward the track in front of the car, it must be presumed in support of the general verdict that after turning upon such track he could, in the exercise of ordinary care, have turned off again before the collision and thus have avoided the injury to the plaintiff.

ID.—FINDINGS AND EVIDENCE CONSTRUED MOST FAVORABLY TO RESPONDENT—APPELLANT'S NEGLIGENCE A PROXIMATE CAUSE OF INJURY.—It is held that the findings and evidence in the record must be construed most favorably to the respondent, and that so viewing them, the conclusion is irresistible that the express company's negligence was a proximate concurring, if not the sole proximate, cause of the injury. It was an active, continuous, contributing cause, and therefore a necessary element of the proximate cause of the injury.

ID.—REVIEW OF INSTRUCTIONS.—It is held that considering the instructions as a whole, the express company, as appellant, has no just cause to complain, and that they stated the law as favorably to the express company as it had a right to demand.

ID.—LAW OF REASONABLE CARE—ENTRY UPON STREET RAILROAD TRACK. As to the rights of the plaintiff, it was the duty of the express company when entering upon the street railroad track, in such a position as to be in danger of being struck by an approaching car, to use ordinary care to ascertain whether a car was approaching and to get out of the way of such car. Its negligence whereby the plaintiff

was injured cannot be excused because the express company assumed that the motorman of the electric car would exercise proper care.

ID.—BILL OF EXCEPTIONS OF EXPRESS COMPANY—LIMITATION OF EVIDENCE—PRESUMPTION AGAINST PREJUDICE AS TO INSTRUCTIONS.—Where the bill of exceptions of the express company limits the evidence to its specifications of insufficiency of the evidence, it must be assumed that any errors in the instructions were without prejudice, where it cannot be said that they would be prejudicial under any conceivable state of facts within the issues.

ID.—ERROR WITHOUT PREJUDICE.—An appellant is not harmed by the action of the court in submitting erroneous instructions, where there is no evidence which would have sustained a finding in his favor under the view of the law most advantageous to him.

APPEALS by different appellants from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. John M. Hunt, Judge.

The facts are stated in the opinion of the court.

Wm. M. Cannon, A. A. Moore, and Stanley Moore, for United Railroads, Appellant and Respondent.

Pillsbury, Madison & Sutro, for Wells, Fargo & Company, Appellant and Respondent.

Ira S. Lillick, for Plaintiff-Respondent.

BURNETT, J.—The action was brought by Robert Francis Spear to recover damages for personal injuries sustained by him as the result of a collision between an east-bound car of said railroad and a wagon of Wells, Fargo & Company. going in the same direction, the horses thereby becoming frightened and crashing into the wagon which said Spear was driving in an opposite direction, throwing him to the ground and severely injuring him. A general verdict against both defendants was rendered by a jury. There were also findings upon certain special issues, which were submitted at the request of the defendants. Plaintiff consented to a reduction of $1,500 from the amount of the verdict in accordance with a conditional order of the trial court on the motion for a new trial, and thereupon said motion was denied. In the mean-

16 Cal. App.—41

time said Robert Francis Spear had died and his executrix was substituted as plaintiff in the cause.

The following may be stated as embracing the material facts of the case: On April 17, 1906, the said Robert Francis Spear was driving a regular mill wagon on the north side of Bryant street, in San Francisco, in a westerly direction toward Oak Grove avenue, which is a short street midway between Fifth and Sixth streets. The United Railroads owns and operates a double track line of electric cars on Bryant street and the south wheels of Spear's wagon were in the center of the two rails of the north track. At the same time, Thomas McCourtney, an employee of Wells, Fargo & Company, was driving a second size rack wagon, which is a wagon with slats on top, down Bryant street from Sixth street in an easterly direction. The south wheels of his wagon were between the north rail of the south track and the south rail of the north track, and the north wheels were between the two rails of the north track. The position of the wagon was such that it would not have been struck by a car passing it on the south track. Without either looking or listening for an approaching car, the driver of Wells, Fargo & Company's wagon changed his course by starting to drive toward and upon the south track as a car was approaching thereon behind said wagon. The track was clear of obstructions until the express wagon changed its course. About the same time that the driver turned toward and upon said south track the collision occurred between his wagon and the car, causing the injury as aforesaid. Each defendant has appealed on a separate record from the judgment and the order denying its motion for a new trial, but we deem it advisable to consider in one opinion the appeals of both defendants. Each defendant seeks to exculpate itself and inculpate the other. In fact, the trial seems largely to have been a contest between the two defendants as to which was liable for the injury, it being conceded by each that a sufficient showing was made against the other to entitle plaintiff to recover.

### First, the Appeal of the United Railroads.

Herein, it is contended that the court erred: 1. In admitting and in refusing to strike out certain evidence; 2. In giving the jury certain instructions; 3. In refusing certain instruc-

tions requested by appellant; 4. In receiving the general verdict in view of the fact that the special findings made by the jury were inconsistent with said general verdict; 5. In submitting certain special issues, designated "c," "d," and "f," to the jury at the request of defendant, Wells, Fargo & Company; and 6. In refusing appellant's motion for a new trial. Concerning these we express our views in the order in which the points are presented.

Oscar Bargewell, the conductor on the car, was called as a witness by appellant, and in his direct examination he testified as to his recollection of the immediate circumstances surrounding the accident. On cross-examination, after stating that Herman was the name of the motorman, he was asked: "How long had he been on the road?" The question was objected to on the general ground and also that it was not cross-examination and outside of the issues. The objection was overruled and the answer received, "About three or four weeks." Over like objections he was permitted to answer quite a number of questions along the same line and finally he was asked this question: "But as to where he was broken in, or how many days he was broken in, or what runs he made, you only know that from hearsay, don't you?" and he answered, "That is all." Appellant then moved to strike out this testimony "as to that matter except what occurred when he appeared in the car-house." The motion was denied, the court saying: "I cannot strike out the testimony about breaking the man in to the duties of the position. What do you want to strike out?" Counsel replied: "His testimony as to the number of runs he had made and the time occupied in breaking him in." The motion was again denied, whereupon counsel for appellant said: "I want to strike out that there was one week of instruction and two weeks of experience," and as to this the motion was thereupon granted. As admitted by appellant, there was thereby much of the objectionable testimony removed from the consideration of the jury but the following questions and answers remained: "Q. How long had he been on the road? A. About three or four weeks. Q. It was his first trip on that car? A. Yes, sir. Q. During the three weeks that he had worked for the company, was he not being educated to the work of a motorman? A. Yes, sir." It is indisputable that said ques-

tions were not within the limits of proper cross-examination, and they should not have been allowed for the additional reason that they concerned the experience and competency of the motorman. The purpose of the interrogatories was, clearly, to impress the jury with the fact of the inexperience and incompetency of the motorman in order that they might more readily reach the conclusion that the accident was due to his negligence. The evidence would naturally have weight with the jury. The effect of the testimony would be the same as though the witness had been allowed to declare that the motorman was without experience and training in the duties of his position. Such evidence is held to have no relevant bearing upon the issue, which is, Was the motorman negligent at the particular time of the occurrence in controversy? The rule is stated in section 65 of Wigmore on Evidence as follows: "A few courts have shown an inclination to admit, exceptionally, the character of a person charged with a negligent act (contributory negligence of a plaintiff) as throwing light on the probability of his having acted carelessly on the occasion in question; provided that the other evidence leaves the matter in great doubt, or that the other evidence is purely circumstantial, or (as sometimes put) that there are no eyewitnesses testifying. The mainstay of this exception doctrine seems to have been the *obiter* suggestion in *Tenney* v. *Tuttle,* 1 Allen, 185. Such evidence is no doubt likely to be of some probative value in such cases, and under the above limitations is hardly contrary to the ordinary policy of avoiding confusion of issues. As a matter of law, however, the doctrine is maintained in a few jurisdictions only, and has been expressly repudiated in many." The exceptional doctrine has been repudiated in this state. (*Towle* v. *Pacific Improvement Co.,* 98 Cal. 342, [33 Pac. 207].) In the Towle case the judgment was reversed because the trial court permitted the defendant to introduce evidence that the driver, who was in charge of a team, was a good, first-class driver, careful in handling horses, and that during the four years he had been in the employ of defendant, he had never been guilty of any mismanagement or carelessness in the care or conduct of the team. As authority for the decision the court relied upon the rule as stated in section 407 of Deering on Negligence as follows: "Whether the act or omission of the

defendant is actionable negligence is to be determined by the character of the act or omission, and not by the defendant's character for care and caution. Evidence that the defendant is a careful, prudent and cautious man is inadmissible to negative his want of ordinary care. Upon the question of the negligence of the engineer at the time of collision of two trains, evidence of the incapacity of the engineer or of his being subject to fits is immaterial." However, it is stated by the supreme court that such evidence is admissible in cases where the *utmost* care is required and when the defendant is held liable for injuries resulting from the slightest negligence. It is difficult to see the distinction in principle. If evidence of character or competency is admissible to show the "utmost" care or slight degree of negligence, it would seem to be relevant to the issue of a less degree of care or of greater negligence. The difference is as to the *quantum* of proof required and not as to the materiality or relevancy of the evidence. But in view of the other evidence in the case it does not seem at all probable that the jury were influenced by this objectionable testimony. It appears without contradiction that the motorman was at one time in the employ of railroads in Colorado, that he had experience as a motorman on trolley cars in Philadelphia in 1890 when they were first put in use in that city, and that he was constantly employed by appellant from December, 1905, to the time of the accident. In face of this showing it would be rather a reflection upon the fairness or intelligence of the jury to hold that the said testimony of the conductor was prejudicially erroneous.

Henry Coffman, a witness called by Wells, Fargo & Company, was near the scene of the accident, and, after stating that the car struck the wagon the second time, he was asked: "Whereabouts?" His answer was: "It hit it along about the front wheel, and that knocked Wells-Fargo's driver off his seat; and it was shoving the wagon along, and then I jumped out in the street and told the motorman to shut off his power and stop the car." Appellant moved "to strike out what the witness told the motorman." The motion was denied. The witness afterward stated that "the power was not off then." When asked upon cross-examination: "Then how could you say that the motorman did not turn off the

power?'' the witness answered: ''I do not know, unless it was
the rapid rate of speed that he was going at.'' Being further
asked: ''So it is a conclusion on your part, is it, from the
rapid rate of speed he was going?'' he answered: ''Yes, sir.''
The motion was then made ''to strike out all of the testi-
mony of the witness showing that the motorman did not
turn off the power.'' The court, after asking this question,
''Could that speed have been maintained for that distance
if no power was on?'' and eliciting the answer, ''No, sir,''
denied the motion. It is clear that what the witness told the
motorman was not responsive to the question and it was mani-
festly hearsay. The declaration of the witness that the motor-
man had not turned off the power was undoubtedly not the
expression of an opinion on a matter of expert testimony,
but it constituted the inference of a fact drawn by the wit-
ness from other facts not involving any special skill or train-
ing ''in any science, art or trade,'' but within the common
observation of all men. The proposition is so simple as to
need probably the citation of no authority. However, ap-
pellant has furnished us two cases to which we may briefly
refer. In *Alabama etc. Ry. Co.* v. *Burgess,* 114 Ala. 587,
[22 South. 169], in a case involving a railroad accident, it
was held that the lower court properly excluded the state-
ment of the witness Cullen, who was a passenger on the train,
''that he knew that the brake was put on, because of the
sudden stopping of the train after the whistle was blown,''
the court stating that this was the mere conclusion of the
witness from facts to which he had already testified. The
question is set forth with fullness and precision in *Sappen-
field* v. *Main St. etc. Ry. Co.*, 91 Cal. 48, [27 Pac. 590].
Therein it is declared that the ''general rule is that witnesses
must testify to facts, and not to opinions, and that whenever
the question to be determined is the result of the common
experience of all men of ordinary education, or is the infer-
ence from particular facts, the inference is to be drawn by
the jury and not by the witness.'' It is undoubtedly true
that the particular fact to which the foregoing relates was
of prime importance to appellant. The jury found that the
motorman could have averted the collision had he used all
the means at his command after discovering the dangerous
situation of the express wagon. This special finding was

probably the feature of the case that led to the general verdict against the railroad, and the said finding in turn may have been based upon or at least influenced by the said testimony as to the failure of the motorman to shut off the power before the collision. But it is a just rule of practice to require a party making an objection to a question or moving to strike out testimony to state the grounds of his objection or of his motion. This is only fair to the trial judge, and it imposes no hardship upon the complaining party. Without the assistance of counsel it would be unreasonable to expect the most wise and prudent judge to avoid error in the stress of a hotly contested trial involving complicated questions of law and fact. There was no compliance with this requirement in the instance under review, and therefore we think appellant should not now be heard to complain. In *Howland* v. *Oakland C. St. Ry. Co.,* 110 Cal. 513, [42 Pac. 983], the general principle is discussed as applied to the objection made to the admissibility of evidence. Therein it is said: ''If, however, we were to assume that the question is open to the criticism now urged, we do not think the objection could avail defendant here, for the reason, as claimed by respondent, that it was not taken in the court below. . . . Appellant should have pointed out the particular defect which rendered the question either incompetent, irrelevant or immaterial, or wherein it was not a proper hypothetical question, that the objection could have been intelligently ruled upon, and if necessary or proper obviated. . . . This is not laying down a merely technical rule. It is one which has its foundation in the proper consideration of what is due to the court and adverse counsel in the trial of a case.'' Of course, the court may sustain an objection or grant a motion upon any sufficient ground although not specified by the party in whose favor the ruling is made, but it is not required to do so. In *Clark* v. *Huber,* 25 Cal. 599, the principle is stated as follows: ''The error alleged here is the exclusion of the defendant's testimony. The respondent is at liberty to suggest any ground that he may choose, to show that the ruling is right, whether advanced in the discussions below or not. If the testimony had been admitted, and Clark had appealed, he would have been required to confine himself to objections specifically taken at the trial and stated in

the record. The distinction is between the case of a party seeking to reverse a judgment and that of a party resisting the attempt.''

We think appellant is wrong in the contention that ''the court erred in permitting the witnesses of the defendant, Wells, Fargo & Company, to testify as to negligence on the part of the defendant United Railroads of San Francisco.'' The basis of the claim is twofold: first, that there is no allegation in the answer of the defendant Wells, Fargo & Company as to negligence on the part of its codefendant the United Railroads, and secondly, that ''where two defendants are charged as being concurrently negligent, the negligence of one defendant is no defense to the other.'' (29 Cyc. 487; Shearman & Redfield on Negligence, sec. 31.)

It is true that in the answer of Wells, Fargo & Company there is no affirmative allegation of the negligence of the railroad, but in said answer there is no denial of the averments in the complaint as to the United Railroads' negligence. It should not be held necessary for the company to repeat the allegation which has been made by the plaintiff and which, by declining to deny, Wells, Fargo & Company has in effect averred. Manifestly, concurrent negligence is inconsistent with sole and exclusive negligence. The allegation of the former, however, does not preclude one of the parties, who has denied any negligence on his own part, from introducing evidence having a tendency to show that the accident was due solely to the negligence of the other party. That, no doubt, was the purpose of the testimony of which complaint is made. Without reviewing it we may say, however, that it rather supports the theory of concurrent negligence, and, therefore, the latter objection of appellant is without merit. But, regardless of these suggestions, the evidence was within the issues made by the pleadings, it was directly in support of plaintiff's allegations against appellant, and it would be a harsh rule that would demand a reversal of a just judgment in favor of plaintiff for the sole reason that legal evidence was offered by a codefendant rather than by plaintiff himself.

Thomas McCourtney, the said driver for the express company, on redirect examination, was interrogated as follows: ''Q. You turned out for a car between Seventh and Eighth

streets. Did that car give you warning?" The court over-ruled an objection to the question that it was "incompetent, irrelevant and immaterial, and not connected with this trans-action." The objection, we think, should have been sus-tained. What was done by another motorman, on another car, at another time, would have no relevancy to the issue whether the motorman on the occasion in controversy here was chargeable with negligence. Respondent does not seri-ously defend the ruling, but she invokes the doctrine that the admission of irrelevant evidence is not ground for reversal when it appears to be of slight consequence. (*Hudson* v. *Hudson,* 129 Cal. 141, [61 Pac. 773] ; *People* v. *Wynn,* 133 Cal. 72, [65 Pac. 126].) There is much force, however, in the suggestion of appellant that "the error was prejudicial, as the jury may have inferred from it that the bell was not rung by the motorman of the car which collided with the wagon because he had heard it when it had been rung on the other occasion. The evidence on this point was conflicting and the jury doubtful as to its determination. The jury, after being directed to retire again, returned a finding to special issue 6 to the effect that the bell on the car was not rung prior to the collision with the express wagon." It may be that the judgment should not be reversed for this ruling alone, but we cannot resist the conclusion that the error was a serious one, as it is impossible to determine what may have been its effect upon the minds of the jurors.

Appellant complains of this instruction: "If you should believe from the evidence that the driver of Wells, Fargo & Company was guilty of negligence in driving too near, or upon, the track of the railroad company, but you should also believe from the evidence that the motorman of the car of the railroad company was aware of the dangerous situa-tion of the express wagon, and that the motorman had a clear opportunity, by the exercise of proper care, to have avoided the collision, but negligently failed to do so, and as a direct consequence of such negligence plaintiff was injured, then your verdict, if in favor of plaintiff, should be against the United Railroads of San Francisco alone and in favor of Wells, Fargo & Company." The instruction seeks to apply what is familiarly known as the "last clear chance" doctrine and is admittedly a correct statement of that rule. It is

contended, however, that it has no application to a case like
this where two parties are charged with separate and con-
current negligence. The discussion of this question may be
deferred till we reach the consideration of the special find-
ings of the jury. It is sufficient to say, now, that the instruc-
tion could not possibly have prejudiced appellant. The only
objection to the instruction is—not that it fails to state the
law correctly as far as appellant's liability is concerned, or
that there was no evidence justifying it—but that the hypothe-
sis assumed does not necessarily exonerate Wells, Fargo &
Company from actionable negligence. The answer is, .of
course, that the jury either disregarded the objectionable
portion, or else rejected the whole of the instruction as not
pertinent to the facts shown by the evidence. This is demon-
strated by their action in finding a verdict against Wells,
Fargo & Company as well as against appellant. For like
reason we attach no decisive significance to the apparent
conflict between this instruction and the direction given by
the court in response to an inquisitive juror as follows:
"Q. In case the jurors think from the evidence that both
were negligent, but that one was more negligent than the
other, how about such a case? The Court: If you should
find that the negligence of both parties jointly and con-
currently—that is, both together—caused the result, then they
would both be liable. If they both assisted by their negli-
gence in producing the result, they would be jointly liable."
It is not disputed that the rule is that the jury are bound
to accept all the propositions of law as given them by the
court for their guidance, and if the instructions on a ma-
terial point are repugnant and contradictory, it is usually
impossible for the jury to decide which to follow, and after
the verdict it is equally difficult to determine that they were
not influenced by the one that was erroneous. (*Sappenfield*
v. *Main St. Ry.*, 91 Cal. 48, [27 Pac. 590].) But it will not
be denied that this is subject to that other rule which has been
denominated "the rule of reason." So viewing it, we think
appellant has no cause for complaint as to this point. Con-
ceding that, notwithstanding there is no right of contribution
between joint tort-feasors, appellant is concerned in having
the jury adopt the theory of a joint liability rather than find
a verdict against the railroad alone, still, considering all the

instructions together in the light of the verdict actually rendered, we can see no reason for attaching to this point the importance claimed by appellant.

The court refused to give the following instruction requested by appellant: "I instruct you that when the negligence of the injured party contributes to the injuries complained of, the law will afford no redress, and if, therefore, you find in this case that the plaintiff was negligent and such negligence contributed to the injuries complained of, I instruct you that he cannot recover against either of the defendants. In order to avoid injury to himself, the plaintiff was bound to have exercised reasonable care to avoid the same, and he was bound to use such care and diligence as a reasonable and prudent man would have exercised under like circumstances." It is not denied that this is a correct statement of the rule of contributory negligence, and that this defense was pleaded in appellant's answer, but the court's action is sought to be justified on the ground that there was no evidence whatever that plaintiff failed in any respect to exercise reasonable care and diligence. Of course, if there was any substantial evidence from which the jury might have concluded that the plaintiff was negligent, it was error for the court to refuse the instruction. While we are entirely satisfied that it cannot be held, as a matter of law, that plaintiff was guilty of contributory negligence, and while we may go further and say that the most reasonable view is that he was entirely free from fault, yet we think it must be said that the question is open to candid disputation, and therefore a proper one to submit to the jury. As we have seen, the plaintiff was driving his team up the street on one car track; the express wagon was coming down the street between the two tracks and as it turned out to pass the plaintiff it was struck by a car from behind. The circumstances shown by the evidence, which seem to point the instruction, are related by appellant as follows: "The plaintiff might have gotten his team out of the way and thus have avoided the accident. The road in front of him was clear. He saw the car coming from the time it left Sixth street. He saw the express wagon start to cross to the right between sixty and two hundred feet away and said 'he is going to get it.' He saw the car coming in time to holler to the driver of the express wagon. When he saw Wells-Fargo's

wagon coming he pulled to one side. The car hit the wagon two hundred feet away from him. He could have turned in between the outside track and the sidewalk. He had passed the junk wagons before he came near Wells-Fargo's wagon. He did not think anything was going to happen, and was going along as usual because he thought he could stop the car quick enough. He did not look for trouble. He tried to get out of the road. The street was clear beyond the junk wagon. The plaintiff did not stop his wagon nor make any effort to stop it. There is nothing to interfere with the plaintiff going up the north side of the street.'' It is quite rare that the court should not submit to the jury, under proper instructions, the question of contributory negligence, and we think there was some room here for the application of the doctrine.

We think the refusal of the court to give the proposed instruction containing a caution against the undue influence of sympathy and an exhortation to regard the law with equal favor toward the corporation and the individual was not prejudicially erroneous. Such an instruction has been given in many cases and no one would deny that it embodies a just principle. In *Bochert* v. *Lehigh Coal etc. Co.*, 208 Pa. 362, [57 Atl. 765], it is declared: ''In the part objected to, the lower judge told the jury that their verdict should be founded in the evidence, and cautioned them not to be influenced by sympathy or prejudice, and in clear and distinct, but emphatic, language, admonished them that a disregard of the instruction might lead to a setting aside of their verdict. . . . It was the right of the judge to give this caution, and in view of the passion and prejudice that grew out of the labor troubles in the anthracite coal regions in 1902, and which existed at the time of the trial, it may be said to have been his duty to charge as he did.'' But we cannot assume that any such condition existed in the case at bar, and, granting that it was an average jury of American citizens, we are disinclined to hold that they needed any such direction. Many such ethical and didactic suggestions might be made, without impropriety, to the jury, but a wise discretion as to that must be left to the trial judge, who is not required to go beyond the essential legal principles involved in the action.

The proposed instruction as to the manner in which the testimony of witnesses generally should be viewed was sufficiently covered by instruction No. 2, given at the request of plaintiff.

Appellant requested the court to give the following instruction: "It is not the duty of a motorman to ring his bell or gong, except to give the usual signal for starting, and except when his car is about to cross an intersecting street. There was therefore no duty imposed upon the motorman to ring his bell or gong between Oak Grove avenue and Fifth street, and if he failed to do so such failure did not of itself constitute negligence." The request was based upon Ordinance No. 1380 of the city and county of San Francisco, providing that "It is not the duty of a motorman to ring his bell or gong, except to give the usual signal for starting, and except when his car is about to cross an intersecting street." The argument is that, in view of this law, it would be negligence *per se* for the motorman to fail to ring the bell or gong at starting or at a crossing but not at any other time, in accordance with the principle announced in *Schmidt* v. *St. Louis Ry. Co.*, 163 Mo. 645, [63 S. W. 834], wherein it is declared: "There is no statute making it the duty of the gripman to sound the gong or bell at the approach of a street crossing, and there is no law making a failure to do so negligence *per se*. Such failure becomes negligence only when the circumstances render the ringing of the bell necessary, and, if the circumstances are in dispute, whether the occasion is such as calls for the sounding of the bell, it is a question of fact for the jury." There is no doubt that the instruction related to one of the vital points in the case, and, since it might be plausibly contended from some of the evidence that the failure to ring the bell was not negligence, the instruction, we think, should have been given. The rule is as stated in *People* v. *Taylor,* 36 Cal. 255, that "In preparing instructions each party may assume any reasonable hypothesis in relation to the facts, and ask the court to declare the law as applicable to it, and it is error to refuse merely because the case supposed does not include some other hypothesis equally rational. . . . Every instruction which correctly declares the law applicable to the case which it supposes, if the case can be rationally inferred from the testimony, should be given." The danger of a mis-

application. of said instruction by the jury was avoided by instruction No. 13, given at the request of Wells, Fargo & Company, that "It is the duty of the motorman to look ahead for any vehicles which may be on or dangerously near the track over which his car is passing, and if he observes such vehicle ahead, to give warning, slow down and put his car under control in order to avoid a collision." The two instructions would have fairly presented the law and left it to the jury to determine whether the circumstances were such as to require the ringing of the bell, notwithstanding that the failure to do so is not necessarily proof of negligence.

The court might well have given the requested instruction: "If any witness examined before you has willfully sworn falsely as to any material matter, it is your duty to distrust his entire testimony." (*People* v. *Stevens*, 141 Cal. 492, [75 Pac. 62]:) But if a juror believed that any witness had so sworn, such juror would not be like the average man if he did not "distrust his entire testimony" without any direction from the court to that effect.

Certain other instructions, hypothetical in character and covering appellant's theory of the facts, were also requested and refused. It cannot be said that they are inconsistent with every rational inference from the evidence, but we think they were substantially covered by the instructions which were given by the court.

There is no inconsistency, in our opinion, between the special findings and the general verdict. The phraseology of some of the questions submitted to the jury is open to criticism but we can see therein no prejudicial error. . The rule is as stated in *Antonian* v. *Southern Pacific Co.*, 9 Cal. App. 731, [100 Pac. 877], that the court should not strain the language of a finding to make out a case of conflict. "The findings should be reconciled if it can reasonably be done, and be so construed *ut res magis valeat quam pereat*—i. e., that the end may be promoted rather than destroyed." Clementson on Special Verdicts, page 137, says: "Though there be apparent inconsistency between some of the special findings and the general verdict, yet, if, taking the findings as a whole, such inconsistency is not necessarily to be implied, the verdict must stand. Obscurities and apparent inconsistencies are to be given weight in favor of rather than against the general ver-

dict. If the findings are open to double construction, that construction will be adopted which upholds the general verdict. A general verdict upon issues and evidence properly submitted is presumed to have decided every fact or deduction therefrom essential to support it, while a special finding must be limited and controlled by its specific terms.'' The argument of appellant is addressed largely to the consideration of the inconsistency of the special findings with one another. Conceding the soundness of the contention, it would not necessarily follow that the general verdict should be set aside. This would ensue if a special finding is absolutely inconsistent and irreconcilable with the general verdict, but this might not be the case, although two special findings were inconsistent with each other, since one or both might be immaterial or concerning a probative matter. We think the most that can be said is that some obscurity has resulted from the special findings. The principal objection is that the findings of the jury that the wagon would not have been struck if it had not turned and that the track was clear of obstruction are inconsistent with ''special issues c, d and f as to what the motorman did or did not or could have done after seeing the 'dangerous position' of the wagon, because if the wagon would not have been struck and if the track was clear of obstructions, then the position of the wagon could not have been dangerous.'' The point is that a wagon in a dangerous position is an obstruction. (21 Am. & Eng. Ency. of Law, p. 763.) The inconsistency is more apparent than real. Applying the foregoing principles, we must hold that the question, ''Did the motorman running the car of the defendant United Railroads see the *dangerous* position of the defendant Wells, Fargo & Company's wagon in time to have slowed down his car and avoided a collision?'' refers to the position of the wagon after the driver had turned to cross the track. It is not disputed that it was then in a dangerous position and an obstruction to the free passage of the car.

It is also claimed that the foregoing special issue, designated ''c,'' ''assumes as a fact that the wagon was in a position which was dangerous, and such that the car could have been slowed down and the collision avoided had it been seen by the motorman in time.'' This goes to the form of the interrogatory, and the objection should have been made at the

time the issues were submitted.  Besides, while it does assume
that the wagon was in a dangerous position, it is not prejudi-
cial to assume what no one can dispute.  While the question
is somewhat complex, it left to the jury to determine whether
the motorman actually saw the dangerous position of the
wagon and whether, after seeing it, he could have avoided the
collision.

We think it too clear for argument that appellant has no
cause for complaint that the said special issues were sub-
mitted to the jury at the instance of Wells, Fargo & Com-
pany rather than on the request of plaintiff.

We think there is no merit in the contention that a new
trial should have been granted, for the reason "that the evi-
dence was insufficient to show that the plaintiff's loss of voice
was a result of the injuries alleged to have been caused by
the defendant, United Railroads."  As pointed out by re-
spondent, Dr. Barbat testified that "Mr. Spear contracted
bronchitis as a direct result of the accident and lost his voice
as a direct result of the bronchitis," and Dr. Toner testified
that "the injuries sustained by the plaintiff resulted in his
present loss of voice."  And while, as to the negligence of
appellant, the case is a close one, we think it cannot be said
that there is an entire absence of evidence in any respect to
support the verdict.

The ruling of a lower court, it may be observed, upon the
motion for a new trial upon the ground of newly discovered
evidence, is very rarely interfered with by an appellate tri-
bunal.  The matter is largely left to the discretion of the
trial judge, he being the judge of the value and effect of the
evidence, and the rule is not to interfere with his decision ex-
cept in case of manifest abuse.  It must be admitted, though,
that appellant here made an exceptionally strong showing
upon this ground, and it is difficult to resist the conclusion
that the motion should have been granted.  Harry Herman,
who was the motorman at the time of the collision, was not
present at the trial.  In the language of appellant, "There
can be no question of the sufficiency of the showing as to why
this witness was not produced.  All of the accident records
of the United Railroads were destroyed in the fire (the great
fire of April 18, 1906).  The filing of the complaint was the
first information that the defendant United Railroads had of

the accident.    The names of the conductor and motorman were not learned until sixteen days before the trial, and the motorman was not located until after the trial, although every effort had been made to ascertain these facts.    The whole of the plaintiff's case, as far as this defendant is concerned, consists of the testimony of various witnesses as to the facts and failure to act of the motorman.    The testimony of the motorman as to these facts, although cumulative, is nevertheless of so overwhelming a character, as to render a different result probable, not so much because of the testimony itself, but because it would be the testimony of the actor, and therefore of infinitely greater probative value.''    Of course, it harmonizes with common observation and experience that ''probability of a higher degree of attention and interest gives rise to a presumption of considerable force that a person's recollection of his act and of attendant circumstances is more definite and trustworthy than another person's recollection of it; especially if it was an act done in the performance of a duty or if the other person's testimony is little more than an expression of opinion or judgment.''    (Moore on Facts, sec. 783.)    Ordinarily, the court is justified in looking with suspicion upon newly discovered evidence, but this case seems to be out of the ordinary.    The facts recited in Herman's affidavit entirely negative any implication of negligence on the part of appellant, and, while a jury might not give full faith to his testimony, it appears just that appellant should have the privilege of affording them the opportunity to do so.

### *Wells, Fargo & Company's Appeal.*

The point to which appellant Wells, Fargo & Company devotes most attention and upon which it seems largely to rely for a reversal is that the company was entitled to judgment on the special findings.    The principle invoked is stated by the supreme court of Kansas in *Colwell* v. *Parker,* 81 Kan. 295, [105 Pac. 524] as follows: ''In an action for negligence, where the jury returned a general verdict for the plaintiff and special findings, including the finding that the defendant was negligent, and another finding that the direct cause of the plaintiff's injuries was the negligence of another, from which it is apparent that the negligence of the defendant was

16 Cal. App.—42

wholly unrelated to the direct, proximate cause of the injury, the defendant is entitled to a judgment on the findings notwithstanding the general verdict.'' In accordance with this principle it is the contention of appellant that the special findings returned by the jury here show conclusively ''that the negligence of the United Railroads of San Francisco was the sole proximate cause of the collision and of the injuries which resulted therefrom, and that the negligence, if any, of Wells, Fargo & Company was not a proximate cause, sole or concurring, of the collision, but was a prior and remote cause thereof which did nothing more than furnish the condition or give rise to the occasion by which the collision and the result. ing injuries were made possible.'' It is admitted, however, that ''where the joint negligence of two or more persons results in injury to another, and the negligence of each of such persons is a concurring proximate cause of such injury, then each is liable in damages for the injuries so caused by the joint acts of all, irrespective of whether one of the defendants was more or less negligent than the others or that his negligence preceded or followed the negligence of his codefendant.'' It is claimed, though, that the verdict should be against the railroad alone, in view of the following considerations: ''The express company's negligence, as alleged in the complaint, consisted in the attempt made by the driver of its wagon ''to cross said track without stopping, looking or ascertaining whether or not a car of defendant United Railroads. was in close or other proximity to it.'' As to this, two questions were submitted to the jury, to each of which the answer was, ''No.'' These are the questions: ''Did the driver of the express wagon look or listen for the approach of the car before starting to drive toward or across the tracks on which the car was approaching (if he did start so to do)?'' and ''Would the wagon of defendant Wells, Fargo & Company have been struck by the car of the defendant United Railroads of San Francisco if said wagon had kept on going in a straight line without turning out for plaintiff?'' Whereas the acts of negligence of the other defendant, which were covered by the complaint, are seen in the findings of the jury which, to some extent, we have already noticed, to the effect that the motorman saw the dangerous situation of the wagon in time to have slowed down his car and have avoided

the collision, and that he did not slow down or use the means in his power whereby he could have averted the accident. The argument is therefore made that not only was the negligence of the railroad last in point of time, but that it was the proximate and, consequently, the sole cause of the injury. It amounts substantially to a contention, as already stated, for the application of what has been not inaptly called "the last clear chance" doctrine. But, strictly considered, this doctrine can be invoked only in favor of the person who is injured. It implies "contributory" negligence on his part and, generally speaking, is operative in those cases where, notwithstanding his want of ordinary care, another wantonly or with knowledge of his danger carelessly or recklessly injures the one who is in jeopardy. Under those circumstances the one so acting is held to be liable although the other has carelessly placed himself in a position of danger. The law is just and humane, and will not tolerate the principle that the mere carelessness of one shall excuse or justify the wantonness or criminal recklessness of another, which causes injury. But the case is quite different when the question arises between two parties who are jointly charged with negligence. In such case it is only necessary to show that both contributed to the injury, notwithstanding the act of one may have been wanton and reckless and that of the other simply manifesting the want of ordinary caution. This question was involved in *Cordiner* v. *Los Angeles Traction Co.*, 5 Cal. App. 401, [91 Pac. 436], and therein it is said: "Appellant seeks to apply the well-established principle that 'he who last has a clear opportunity of avoiding the accident, by the exercise of proper care to avoid injuring another, must do so.' (*Esrey* v. *Southern Pacific Co.*, 103 Cal. 541, [37 Pac. 500].) This rule is only applicable to cases where the defense is based upon the contributory negligence of plaintiff due to his want of care in placing himself in a position of danger, and where he may, notwithstanding his negligence, recover from a defendant, who by the exercise of proper care could have avoided the injury. We are unable to perceive why this rule should apply to plaintiff, who was in no way chargeable, by imputation or otherwise, with negligence; nor are we referred to any authority which supports the proposition. Indeed, all the authorities recognize the right of recovery against either

or both of the defendants whose concurring acts of negligence united in producing the injury. (1 Shearman & Redfield on Negligence, p. 122; 1 Thompson on Negligence, p. 75; *Doeg* v. *Cook,* 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707]; *Thompkins* v. *Clay St. Ry. Co.,* 66 Cal. 163, [4 Pac. 1165]; *Pastene* v. *Adams,* 49 Cal. 87.)''

But aside from the foregoing somewhat technical consideration, it is apparent that appellant's contention should not prevail. As suggested by respondent, the jury made no special finding upon the question as to whether or not the negligence of the driver of the express wagon ended or culminated when he turned toward or upon the track. As there is no special finding upon the question, it must be assumed, in support of the general verdict, that said driver, after turning upon the track, in the exercise of ordinary care could have turned off again before the collision and thus have avoided the injury.

Indeed, viewing the findings of the jury and the evidence in the record, as we must, in the light most favorable to respondent, the conclusion is irresistible that appellant's negligence was a proximate concurring, if not the sole proximate, cause of the injury. It thus appears that said negligence continued till the time of the injury, and had it not been for this negligence the accident would not have happened. In other words, it was an active, continuous contributing cause and, therefore, at least a necessary element of the *proximate* cause of the injury. We are at a loss to understand what element is lacking to render appellant liable. In reference to this point we agree with the views of Hon. John Hunt, the trial judge, who, in his opinion denying the motion to enter judgment for appellant, said: ''Now, the injury suffered by plaintiff was not self-inflicted; it resulted either from the negligence of the defendant, the express company, or from the negligence of the defendant, the railroad company, or from the negligence of both. Under such conditions it cannot be that an innocent party injured in consequence of such negligence is remediless. In this case it is admitted that the car struck the wagon and that the wagon, in consequence of the impact, struck the plaintiff's wagon, and that the plaintiff was thereby injured. These acts of negligence may be

said to have been concurrent and simultaneous in point of time, although neither of those acts, standing alone, would have occasioned the result. If the wagon of the express company had not been driven upon the railroad track, it would not have been struck, and the plaintiff would not have been injured. If the motorman on the car had not been negligent, the collision would not have ensued, and the plaintiff would not have been injured. It was the combination of the negligent acts of the two defendants that occasioned the result, and therefore inquiry is immaterial into the precise degree or extent of the negligence of each of the parties defendant; or, the relation, in point of time, of such acts of negligence; or whether they were concurrent or successive, independent or joint, or whether one proximately contributed to the result more than the other. The rule of law upon this subject is well expressed in the *Slater Case,* 64 N. Y. 138, where it was said: 'Although the act of each defendant alone might not have caused the injury, there is no good reason why each should not be liable for the damage caused by the different acts of all.' In the *Pastene Case,* 49 Cal. 87, lumber had been negligently piled by defendants' servants. The driver of a wagon, who was a stranger to the defendants, negligently drove his horse against the lumber pile, causing it to fall and injure the plaintiff. The negligent act of the defendants' servants in that case in piling the lumber, and the negligent act of the driver in colliding with it, were, in point of time and relation, separate and not interdependent acts, and yet the court held that the negligent act of piling the lumber was, in effect, a concurring cause in producing the result, and the defendants were accordingly held; although in point of time at least, the negligence of the driver might be claimed to have been the proximate cause of the plaintiff's injury. In the *Turntable Case,* 91 Cal. 296, [25 Am. St. Rep. 186, 27 Pac. 666], and in other cases, the Pastene Case has been cited as authority. Under the ruling in the Pastene Case, the negligent act of the driver, in driving upon and along the railroad track, continued down to and at the time when the car collided with it, and thus the negligence of the defendants was joint and concurrent, and for the consequences thereof both defendants are responsible. In Thompson on Negli-

gence, section 75, it is said: 'If the concurrent, or successive negligence of two persons combined, result in an injury to a third person, he may recover of either, or both, and neither can interpose the defense that the *prior,* or concurrent, negligence of the other contributed to the injury,' and in support of that doctrine the author cites a number of authorities.''

In *Forsyth* v. *Los Angeles Ry. Co.,* 149 Cal. 572, [87 Pac. 26], in an action for damages caused to a passenger on a street-car by a collision between the car and a heavy wagon, wherein the contention was made by the railroad company that the negligence of the driver of the wagon was the proximate cause of the injury, the supreme court said: ''But the deceased was not guilty of any contributory negligence, and if the negligence of the railway company was a cause of the damage, it has no defense to this present action in the fact that the negligence of the storage company also contributed to that damage. This appellant must show that it was not guilty of any negligence which, in whole or in part, caused the injury.''

But the principle is too well settled to require the citation of other authorities. We cannot undertake to review the cases cited by appellant, but most, if not all of them, involved the question whether the contributory negligence of the injured party or the *subsequent* negligence of the defendant was the proximate cause of the injury, and a not unreasonable tendency is manifested to hold liable the party who was chargeable with the later and grosser negligence. It is apparent that in many of the cases cited the terms ''proximate cause'' and ''contributory negligence'' are not used with precision and the grounds of some of the decisions are open to serious controversy, but, in general, they illustrate the ''last chance doctrine'' and hold as stated in *Indianapolis St. Ry. Co.* v. *Schmidt,* 35 Ind. App. 202, [71 N. E. 663] : ''That the negligence of the plaintiff ceases to be the proximate cause of the injury when the defendant has opportunity to prevent it and, with *knowledge* of the exposed condition of the plaintiff, negligently refuses to do so.''

Appellant complains of the following instruction given at the request of the United Railroads: ''It is the duty of any person traveling upon, or partly upon, a street railroad track,

or in such close proximity to it as to be in danger of being struck by an approaching car, even though proceeding in the same direction of the car, to use ordinary care to ascertain whether a car is approaching, and to get out of the way of said car.'' The latter portion of the instruction is somewhat subject to criticism, but the phrase ''ordinary care'' is implied, and the jury could have understood the instruction only as meaning that it is the duty of a person, under the circumstances mentioned, ''to use ordinary care to ascertain whether a car is approaching and to use ordinary care to get out of the way of said car.'' Even if we were to concede that this states the rule too favorably to the railroad company, if the action had been brought against it by Wells, Fargo & Company, still it is not too exacting in favor of a third party who is injured by the failure of the driver to observe it, and it is a correct general statement of the law. In *Baker* v. *Savage,* 45 N. Y. 191, [6 Am. Rep. 66], it is said: ''Reasonable care requires, in all cases, the exercise of vigilance proportioned to the danger encountered. To enter upon a street crossing in a city where the moving vehicles are numerous, and a collision with them likely to produce serious injury, without looking in both directions along the street to ascertain whether any are approaching, and if so, their rate of speed, and how far from the crossing, would not only be the omission of reasonable care for his own safety, but an act of rashness.'' There is no substantial difference between this instruction and the rule as stated in *Holmes* v. *South Pacific Coast Ry. Co.,* 97 Cal. 161, [31 Pac. 834], *Bailey* v. *Market St. Cable Ry. Co.,* 110 Cal. 320, [42 Pac. 914], and *Hamlin* v. *Pacific Electric R. Co.,* 150 Cal. 776, [89 Pac. 1109].

The jury could not have understood the language as importing an exclusive right in the railroad company to the use of the track. Any such implication was obviated by instruction No. 31 which we have already considered. It may be said also as to the latter part of the instruction complained of that it necessarily follows from the rule requiring the person ''to use ordinary care to ascertain whether a car is approaching.'' The only purpose of exercising this care is that he may be in a position to ''use ordinary care'' to avoid a collision—in other words, ''to get out of the way of the car.''

The cases cited by appellant, *Clark* v. *Bennett,* 123 Cal. 278, [55 Pac. 908], *Campbell* v. *Los Angeles Traction Co.,* 137 Cal. 567, [70 Pac. 624], and *Scott* v. *San Bernardino Valley etc. Co.,* 152 Cal. 611, [93 Pac. 677], simply hold that it is not negligence *per se* for a person to attempt to cross a street railway when a car is approaching—a proposition which no one should dispute. Otherwise, as stated in one of the cases, ''He could never attempt to cross such a track in the crowded parts of a city where there is practically always an approaching car.''

The court did not err in omitting from one of the instructions requested by appellant the following clause: ''and the driver of Wells-Fargo's wagon had a right to assume that this would be done (that is, that the motorman would give warning and slow down) at the time of the accident complained of if a car should approach him from behind. If there were obstructions on the right hand or south side of the street at the time mentioned, or if that portion of the street was full of chuck-holes, the driver had the right to take the middle or northerly side of the street in order to have a clear way.'' It cannot be the law, because it is not reasonable, that one's negligence whereby another is injured is excusable because the former assumed that a third party would do his duty. One without fault himself can recover for injury caused by the negligence of another, whether or not the latter mistakenly assumed that a third party would exercise proper care. Indeed, in the Scott case, cited by appellant, it is said: ''He cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him. . . . The rule should be that the traveler has the right to assume, until his senses, exercised with reasonable diligence, inform him to the contrary, that the persons operating street-cars will use ordinary care, give the usual signals, and keep the usual look-out ahead.'' As to the latter portion of the instruction it is sufficient to say that it was properly rejected because it did not fit the evidence. Considering the instructions as a whole, we are satisfied that appellant has no. just cause to complain. They certainly stated the law as favorably to the express company as it had a right to demand, and, altogether, they gave to the jury a fair and

just notion of the law upon the points discussed.  (*Stephenson* v. *Southern Pacific Co.,* 102 Cal. 143, [34 Pac. 618, 36 Pac. 407].)

Finally, there is another consideration which seems a complete answer to nearly if not to all of appellant's contentions. The bill of exceptions of the express company purports only to give "all the evidence introduced at the trial tending in any way to support or justify the verdict of the jury in the particulars hereinafter specified by defendant Wells, Fargo & Company as the particulars in which said verdict was not justified by the evidence." When we turn to those particulars, we find they all relate to the capacity of plaintiff to earn money, his employment, the extent of his injury and the amount to which he has been damaged, while all the alleged errors which are argued in the brief relate to the subject of negligence.  What is the result?  Simply, that we must assume that the evidence was such that the errors, if any, were without prejudice, for it surely cannot be said that any of them would be prejudicial under any conceivable state of facts within the issues.  Furthermore, if necessary to support the judgment, we should assume that the case was tried upon the theory that such evidence was within the issues. At most, then, we would have a case of abstract error, and what was said in *Hamlin* v. *Pacific Electric Ry. Co.,* 150 Cal. 776, [89 Pac. 1109], in reference to an erroneous instruction would apply here to all the points made by appellant: "He was therefore not harmed by the action of the court in submitting this question to the jury on erroneous instructions, since there was no evidence which would have sustained a finding in his favor under the view of the law most advantageous to him.  Under these circumstances, error in the instructions furnishes no ground for reversal. (*Green* v. *Ophir etc. Co.,* 45 Cal. 522; *In re Briswalter,* 76 Cal. 230, [18 Pac. 369]; *Edwards* v. *Wagner,* 121 Cal. 376, [53 Pac. 821].)"

We have thus devoted much time and space to the various contentions of the parties.  We deemed it proper to do so as they are important, and they have been argued exhaustively and with apparent sincerity by learned counsel, and in view of the contingency of a new trial.

We have no doubt that the judgment and order should be reversed as to the United Railroads and affirmed as to Wells, Fargo & Company, and it is so ordered.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 23, 1911, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 22, 1911.